Linda L. THOMPSON and Unemployment Insurance Appeal Board, Appellees Below, Appellants,

v.

CHRISTIANA CARE HEALTH SYSTEM, Appellant Below, Appellee.

No. 104, 2010.

Supreme Court of Delaware.

Submitted: May 18, 2011.
Decided: Aug. 12, 2011.

Jeffrey K. Martin, Martin & Associates, P.A., Wilmington, Delaware, for appellant.

David H. Williams, James H. McMackin, III and Allyson M. Britton (argued), Morris James LLP, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

Linda Thompson appeals from a Superior Court judgment reversing the determination of the Unemployment Insurance Appeals Board that good cause existed for Thompson's voluntary resignation and granting her unemployment benefits. Thompson contends that: (1) good cause existed for voluntarily terminating her employment, (2) she exhausted her administrative remedies, and (3) substantial evidence in the record supported the UIAB's decision. Because we find that substantial evidence did not support the UIAB's decision and that the UIAB erred as a matter of law by concluding that Thompson was entitled to benefits pursuant to 19 *Del. C.* § 3314(1) [1], we **AFFIRM** the judgment of the Superior Court.

### Factual and Procedural Background

From September 2002 to February 2008, Thompson worked as an administrative assistant for Howard Wellness Center which is a medical facility operated by Christiana Care Health System. Thompson testified that from 2006 to 2008, her working environment was "very disruptive," involving power struggles and repeated employee disagreements. Specifically, Thompson claims that she got into several disagreements with her supervisor, Leighanne Hollans. Thompson testified that after returning from an internal transfer interview that Hollans accused Thompson of not being a team player and of abandoning her. Because of the stressful work environment, Thompson explained, her "health was in jeopardy. I'd come in everyday, upset, leave upset because these grown up people were not being professional." [2]

The Center's employee relations representative testified that Thompson could have reported her grievances "up her chain of command," and that "[s]he could at any point contact human resources and employee relations" about her employment issues. Thompson did not follow either of those procedures. Three or four months before she resigned, Thompson contacted a recruiter in Human Resources, rather than an Employee Relations representative, and complained to the recruiter about the disruptive work environment.

Thompson also contacted Kathy Cannatelli, the Center's manager who oversaw

---

1. 19 *Del. C.* § 3314(1) provides that:
   For the week in which the individual left work voluntarily without good cause attributable to such work and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

2. Record at 59.

Hollans, but did not contact anyone above Cannatelli in the Center's "chain of command." Thompson testified that employees were told that, "we could not go any further than Kathy Cannatelli because [Cannatelli's superior] would not listen to what we would say. She would tell us you handle that with Kathy Cannatelli, that's her job."[3] On January 25, 2008, Thompson called Cannatelli to discuss issues regarding Thompson's coordinator, but Cannatelli was in a meeting and unavailable and advised Thompson to try to work it out with the coordinator.

On January 29, 2008, Thompson met with Cannatelli to discuss Thompson's dissatisfaction with her current position. Thompson requested a transfer out of the Center and if a transfer were not possible, she would resign. Cannatelli responded that a transfer was not available at that time. After her meeting with Thompson, Cannatelli contacted Michelle Eklund who managed employee relations for Christiana Care's Wellness Centers. Eklund denied any prior knowledge of Thompson's complaints regarding her employment; however, Cannatelli and Eklund began the process of reviewing Thompson's complaints.

On February 1, 2008, Thompson submitted her letter of resignation. On March 2, 2008, Thompson applied for unemployment benefits. On March 18, 2008, the Claims Deputy determined that Thompson had voluntarily quit without good cause, thereby disqualifying her from receiving unemployment benefits. On March 24, 2008, Thompson appealed the decision of the Claims Deputy to the Appeals Referee. Following a hearing, the Appeals Referee affirmed the Claims Deputy's decision.

On May 13, 2008, Thompson appealed to the UIAB. After a hearing, on July 16, 2008 the UIAB reversed the Appeals Referee and found that Thompson had voluntarily terminated her employment for "good cause" entitling her to unemployment benefits. CCHS appealed the UIAB's decision, which the Superior Court reversed on February 8, 2010. The Superior Court reasoned that "unhappiness arising out of an unpleasant work environment does not constitute 'good cause' for purposes of 19 Del. C. § 3314(1)."[4] The Superior Court also found that the record lacked substantial evidence to support the UIAB's conclusion that Thompson resigned her employment for good cause. Additionally, the Superior Court held that Thompson did not exhaust administrative remedies before resigning. This appeal followed.

## Claims on Appeal

On appeal, Thompson advances three assignments of error: (1) she voluntarily terminated her employment for good cause, (2) she exhausted her administrative remedies before voluntarily terminating her employment, and (3) the Superior Court incorrectly held that the record lacked substantial evidence supporting the UIAB's decision.

## Standard of Review

■■■■ Upon review of the Superior Court's reversal of a UIAB decision our function "is limited to a determination of whether there was substantial evidence sufficient to support the [UIAB's] findings[,]"[5] and whether they are free from

---

3. Record at 72.

4. *Christiana Care Health Sys. v. Thompson*, 2010 WL 532451, at *3 (Del.Super.Ct. Feb. 8, 2010).

5. *Unemployment Ins. Appeal Bd. v. Duncan*, 337 A.2d 308, 308 (Del.1975).

legal error.[6] Because we, like the Superior Court, consider the record in the light most favorable for the party prevailing on the UIAB appeal, the facts are viewed in the light most favorable to Thompson.[7] "The appellate court does not weigh the evidence, determine questions of credibility, or make its own factual findings."[8] It is within the exclusive purview of the [UIAB] to judge witness credibility and resolve conflicts in testimony.[9]

## Discussion

### GOOD CAUSE FOR VOLUNTARILY TERMINATING EMPLOYMENT

■ Thompson contends that she voluntarily terminated her employment for good cause, and thus is entitled to unemployment benefits. Specifically, Thompson claims that the problematic nature of her work environment, especially the excessive turnover, unprofessional conduct and inability to transfer, created a chaotic atmosphere which justified her voluntarily terminating her employment.

Under 19 *Del. C.* § 3314(1), an individual cannot qualify for unemployment benefits where that individual leaves work "voluntarily without good cause attributable to such work...."[10] The Superior Court has defined "good cause" as "such cause as would justify one in voluntarily leaving the ranks of the employed and joining the ranks of the unemployed ... [A]n employee does not have good cause to quit merely because there is an undesirable or unsafe situation connected with his employment. He must do something akin to exhausting his administrative remedies...."[11]

■ This Court has not previously defined good cause in the context of unemployment compensation. The Federal Unemployment Tax Act bars unemployment benefits if an employee voluntarily leaves work without good cause.[12] After analyzing cases from other jurisdictions, we con-

6. *See Straley v. Advance Staffing, Inc.*, 984 A.2d 124 (Table), 2009 WL 3451913, at *2 (Del. Oct. 27, 2009) (citing *Unemployment Ins. Appeal Bd. Of Dept. of Labor v. Duncan,* 337 A.2d 308, 309 (Del.1975); 19 *Del. C.* § 3323; *McIntyre v. Unemployment Ins. Appeal Bd.,* 962 A.2d 917 (Table), 2008 WL 4918217, at *1 (Del. Nov. 18, 2008); and *Histed v. E.I. Du Pont De Nemours & Co.,* 621 A.2d 340, 342 (Del.1993)).

7. *See Pochvatilla v. U.S. Postal Service,* 1997 WL 524062, at *2 (Del.Super.Ct. June 9, 1997).

8. *Falconi v. Coombs & Coombs, Inc.,* 902 A.2d 1094, 1098 (Del.2006) (reviewing an Industrial Accident Board decision).

9. *Straley v. Advance Staffing, Inc.,* 2009 WL 3451913, at *3 (citing *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66–67 (Del.1965)).

10. 19 *Del. C.* § 3314(1).

11. *O'Neal's Bus Service v. Employment Secur. Comm'n,* 269 A.2d 247, 249 (Del.Super.Ct.1970).

12. Federal Unemployment Tax Act, 26 U.S.C. §§ 3301–3310 (1984). The Social Security Act of 1933 created the Unemployment Compensation program (UC), a federal-state social insurance program that ensures wages for individuals out of work, through no fault of their own. To facilitate the UC, the U.S. Congress passed the Federal Unemployment Tax Act (FUTA), which allows the Internal Revenue Service to collect taxes to fund state unemployment programs. FUTA provides a fund for states to borrow from to supplement their own unemployment fund. However, in order to get funding under this scheme state unemployment laws must include specific requirements. Each state creates its own unemployment benefits and tax structure based on the guidelines provided by FUTA. Every state must include a provision barring unemployment benefits if an employee voluntarily leaves work without good cause because under federal requirements, to be eligible for benefits, individuals must demonstrate that they are able to work, willing to work, and available for work.

clude that Delaware needs a more contextually appropriate definition of good cause.[13] In this context, good cause is established where: (i) an employee voluntarily leaves employment for reasons attributable to issues within the employer's control and under circumstances in which no reasonably prudent employee would have remained employed; and (ii) the employee first exhausts all reasonable alternatives to resolve the issues before voluntarily terminating his or her employment.

The UIAB found that, "[a]lthough it does not appear that [Thompson] was the focus of [ ] hostility, she did work around or among fellow workers who did not get along, and she was faced with a turnover of co-workers, whereas she could not obtain a transfer."[14] Thompson "persuaded the [UIAB] that her work was affected by an unpleasant atmosphere within the facility, involving the behavior of her fellow employees toward one another."[15] Based on these findings the UIAB held:

> Ordinarily, the conduct of others would not provide good cause for terminating employment. However, the evidence here is that the situation was ongoing and had deteriorated. It appears that the [Center] failed to address the situation, except by allowing employees other than [Thompson] to transfer.... She thus had good cause to leave her employment.... [16]

The Superior Court, relying on *Swann v. Cabinetry Unlimited*[17] and *Ament v. Rosenbluth International,*[18] disagreed with the UIAB's application of the good cause test to Thompson's case. That court held that "unhappiness arising out of an unpleasant work environment does not constitute good cause for purposes of 19 *Del. C.* § 3314(1)." In *Swann,* the Superior Court held that "[t]he employee must de-

---

13. *See Acro Tech., Inc. v. Admin'r., Unemployment Comp. Act,* 25 Conn.App. 130, 593 A.2d 154, 157–58 (1991) (good cause is a reason which would impel the ordinary reasonable person to leave and which provide the individual with no reasonable alternative but to terminate his employment); *Newland v. Job Serv. North Dakota,* 460 N.W.2d 118, 122–123 (N.D.1990) (good cause is defined as a reason for abandoning one's employment which would impel a reasonably prudent person to do so under the same or similar circumstances); *McPherson v. Emp't. Div.,* 285 Or. 541, 591 P.2d 1381, 1388 (1979) (good cause must be (a) objectively related to the employment and (b) such as would impel a reasonably prudent person to quit under similar circumstances); *Green Tree Sch. v. Unemployment Comp. Bd. of Review,* 982 A.2d 573, 576–577 (Pa.Commw.2009) (good cause results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner); *Reetz v. Lutheran Health Sys.,* 611 N.W.2d 230, 234 (S.D.2000) (good cause exists after an employee demonstrates (1) he left work primarily because of a work-connected factor of such a compelling nature that a reasonably prudent person would have left his employment, and (2) he first exhausted all reasonable alternatives prior to termination).

14. Record at 49.

15. *Id.* at 50.

16. *Id.* Because the UIAB did not rely on Thompson's reported medical condition to conclude that she left work for good cause, we do not address the issue of whether her testimony regarding her medical condition was reliable, despite the absence of supporting medial documentation. *Id.* at 49–50.

17. *Swann v. Cabinetry Unlimited,* 1993 WL 487892 (Del.Super.Ct. Oct. 15, 1993) (affirming the UIAB's decision that an employee did not quit her job for "good cause" where the employee claimed that she could no longer tolerate her employer's temper).

18. *Ament v. Rosenbluth Int'l.,* 2000 WL 1610770 (Del.Super.Ct. Aug. 31, 2000) (affirming the UIAB's decision that stress does not constitute "good cause" for leaving employment).

velop a tolerance level to bear minor deviations in the working condition as long as there is not a lessening of basic employment rights or cruel and harsh punishment by the employer."[19] In *Ament*, the Superior Court held that an employee "did not have good cause to leave her employment simply because she was in an undesirable situation. Good cause exists when [an employee's] ability to earn a living is jeopardized and that was not the case here."[20]

■ The record does not support Thompson's assertion that she voluntarily terminated her employment because the Center denied her requests to transfer to other wellness centers. Nothing in the record supports the factual finding, made by the UIAB, that "others were allowed to transfer to another facility or a different job, but [Thompson] was repeatedly denied this option."[21] The Superior Court properly concluded that "[t]he record is devoid of any indication that Thompson was qualified for any of the positions she sought or why she was not granted what she sought."[22] In fact, the UIAB found that Thompson failed to present evidence that she was qualified for a transfer or that the Center improperly denied her transfer requests.[23] The UIAB correctly found that Thompson failed to establish that she was the victim of a hostile work environment. Thompson's unhappiness arose out of her disagreements with her manager and the conduct of her co-workers—a situation that Thompson decided was personally untenable. We agree with the Superior Court that unhappiness arising out of an unpleasant work environment, without more, does not constitute good cause. Therefore, the record lacks substantial evidence supporting the UIAB's conclusion that the Center improperly denied Thompson's transfer requests. Accordingly, the UIAB erred as a matter of law by determining that Thompson left her job for good cause.

## THOMPSON DID NOT EXHAUST HER ADMINISTRATIVE REMEDIES

■ Thompson contends that the Superior Court erroneously determined that the UIAB lacked substantial evidence to find that she did "something akin to exhausting [her] administrative remedies by, for example, seeking to have the situation corrected by proper notice to [her] employer ..."[24] Although 19 *Del. C.* § 3314(1) "does not impose a strict requirement that an employee [ ] exhaust all potential remedies before the employee may have good cause to quit, an employee does have an obligation to inform an employer of resolvable problems and to make a good faith effort to resolve them before simply leaving."[25]

■ Under 19 *Del. C.* § 3314(1), an employee must first exhaust all reasonable alternatives to resolve the issues underlying her employment before voluntarily terminating employment. In order to exhaust all reasonable alternatives, the employee must at least notify the employer

---

19. *Swann,* 1993 WL 487892, at *1 (citation omitted).

20. *Ament,* 2000 WL 1610770, at *2.

21. Record at 49.

22. *Christiana Care Health Sys. v. Thompson,* 2010 WL 532451, at *3 (Del.Super.Ct. Feb. 8, 2010).

23. Record at 49.

24. *O'Neal's Bus Service,* 269 A.2d at 248.

25. *Sandefur v. Unemployment Ins. Appeals Bd.,* 1993 WL 389217, at *4 (Del.Super.Ct. Aug. 27, 1993).

of the problem and request a solution.[26] The employee "must also bring the problem to the attention of someone with the authority to make the necessary adjustments, describe the problem in sufficient detail to allow for resolution, and give the employer enough time to correct the problem." [27]

The record reflects that Thompson contacted a recruiter in Human Resources to discuss transferring offices and informed the recruiter about her dissatisfaction. Thompson did not contact an Employee Relations representative to resolve her grievances. Thompson also attempted to express her complaints to Cannatelli before resigning. Thompson did not believe that she could contact anyone higher in her chain of command. Three days before resigning, Thompson met with Cannatelli to discuss her unhappiness with Hollans and her work environment. Thompson told Cannatelli that she wanted to transfer or, failing that, would resign. Cannatelli then contacted Eklund, from Employee Relations to discuss Thompson's claims[28] but by that time Thompson had resigned.

The UIAB found that Thompson focused on obtaining a transfer, rather than pursuing a remedy for the job conditions. Thompson's attempt to discuss her grievances with the recruiter while trying to obtain a transfer does not absolve her obligation to exhaust all reasonable alternatives because the CCHS recruiters lacked the authority and relevant information to resolve her underlying issues. A reasonably prudent employee desiring to maintain employment would have utilized the available procedures and protocols established by the employer, which here included contacting Employee Relations or Management. Thompson did eventually contact Cannatelli, a supervisor in her chain of command but only three days before resigning. Unfortunately, as the UIAB found, Thompson became frustrated and abandoned her attempt to remedy the situation. But the record does not support the UIAB's further finding that CCHS ignored Thompson's requests and allowed other employees to transfer. Because Thompson resigned before allowing her employer enough time to resolve the known issues, the UIAB erred as a matter of law when it concluded she had exhausted known protocols or administrative remedies.

## Conclusion

Because substantial evidence does not support the UIAB's decision and the UIAB erred as a matter of law by concluding that Thompson was entitled to benefits pursuant to 19 *Del. C.* § 3314(1), we find Thompson's assertion of error unpersuasive. Therefore, the judgment of the Superior Court is **AFFIRMED.**

---

**26.** See *Calvert v. State, Dept. of Labor & Workforce Develop., Empl. Sec. Div.,* 251 P.3d 990, 1001–1002 (Alaska 2011).

**27.** *Calvert v. State, Dept. of Labor & Workforce Develop., Empl. Sec. Div.,* 251 P.3d 990, 1001–1002 (Alaska 2011).

**28.** See *White v. Security Link,* 658 A.2d 619, 624 (Del.Super.Ct.1994) (holding that the "reasonableness of the employee's efforts should be evaluated in light of the relevant circumstances...").