# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE DEPARTMENT OF JUSTICE of the  :
STATE OF DELAWARE                  :
                                   :
           Appellant,              :
    v.                             :
                                   :
ROBIN S. DENSTEN,                  :    C.A. No. N14A-09-008 RFS
                                   :
and                                :
                                   :
UNEMPLOYMENT INSURANCE             :
APPEAL BOARD,                      :
                                   :
           Appellees.              :

## MEMORANDUM OPINION

Submitted: June 1, 2016
Decided: July 6, 2016

*Upon Appeal from the Decision of the Unemployment Insurance Appeal Board.*
*Affirmed.*

Kevin R. Slattery, Esquire, Deputy Attorney General, Wilmington, Delaware, Attorney for Appellant Department of Justice of the State of Delaware.

Dimitry Pilipis, Esquire, Legal Services Corporation of Delaware, Inc., Wilmington, Delaware, Attorney for Appellee Robin S. Densten.

Paige J. Schmittinger, Esquire, Deputy Attorney General, Wilmington, Delaware, Attorney for Appellee Unemployment Insurance Appeal Board.

**STOKES, J.**

## I. INTRODUCTION

This is an appeal by the Department of Justice of the State of Delaware ("DOJ") from a decision of the Unemployment Insurance Appeal Board (the "UIAB" or "Board") issued on September 18, 2014. The UIAB found that Robin S. Densten ("Ms. Densten") voluntarily left her employment at the DOJ for good cause. For the reasons set forth below, the decision of the UIAB is **AFFIRMED**.

## II. FACTS AND PROCEDURAL HISTORY

In 2005, the appellee, Ms. Densten, became a DOJ Trial Support Specialist. Ms. Densten was responsible for the preparation of audio/visual and other demonstrative exhibits for the DOJ's prosecutors. Given Ms. Densten's position, she often was required to work late hours. In the fall of 2013, Ms. Densten submitted an overtime request that initially was denied because she failed to obtain prior approval in accordance with the DOJ's policy. On September 27, 2013, Ms. Densten submitted her resignation.

On November 15, 2013, Ms. Densten filed a claim for unemployment compensation. A Claims Deputy determined that, pursuant to 19 *Del. C.* § 3314, Ms. Densten left work voluntarily without good cause; therefore, she was not entitled to unemployment compensation. Ms. Densten filed an appeal, and a hearing was scheduled before an Appeals Referee. At the hearing, Ms. Densten appeared *pro se* and testified. The DOJ presented the testimony of two witnesses, Diane Hasse, the DOJ's Human Resources Director, and Joseph Grubb, Ms. Densten's supervisor. Mr. Grubb became Ms. Densten's supervisor upon assuming the position of Chief New Castle County Prosecutor. In a decision dated March, 26, 2015, the Appeals Referee likewise found Ms. Densten was disqualified.

Ms. Densten filed a timely appeal of that decision to the UIAB, and a hearing was scheduled for July 16, 2014. Because of witness unavailability, the DOJ sought a continuance. The UIAB continued the hearing for July 30, 2014. On July 28, 2014, Ms. Densten requested a continuance to better prepare her case. This request was granted, and the hearing was rescheduled for August 13, 2014. The DOJ, again citing witness unavailability, requested another postponement. However, the UIAB essentially informed the DOJ the request would have to be made at the hearing. This was an older case on the docket.

When the DOJ made the request, the UIAB denied it; however, the Board limited the scope of Ms. Densten's testimony. Specifically, she only could testify to conversations she had with Ms. Hasse, the only DOJ witness present at the hearing. On September 8, 2014, the UIAB reversed the decision of the Appeals Referee, finding that Ms. Densten did have good cause to voluntarily leave work.

The DOJ filed a timely appeal to this Court on September 18, 2014. Briefing is complete, and the matter is ripe for decision.

## III. STANDARD OF REVIEW

The Court's appellate review of decisions of the UIAB is limited. The Court must ascertain whether the Board's conclusions are supported by substantial evidence and free from legal error.[1] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[2] The Court will not weigh evidence, determine questions of credibility, or make its own factual findings.[3] Instead, the Court is restricted to a

---

[1] *Gsell v. Unclaimed Freight*, 1995 WL 339026, at *2 (Del. Super. May 3, 1995).
[2] *Oceanport Ind. v. Wilm. Stevedores*, 636 A.2d 892, 899 (Del. 1994).
[3] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 782 (Del. 2011).

consideration of the record[4] in a light most favorable to the prevailing party before the UIAB.[5]

The scope of review for any court considering a decision of the UIAB on a continuance request is whether there was an abuse of discretion.[6] A procedural decision by an administrative agency is not an abuse of discretion unless it is based on clearly unreasonable or capricious grounds, or the decision exceeds the bounds of reason in view of the circumstances and ignored recognized rules of law or practice so as to produce injustice.[7] In the absence of an abuse of discretion, the UIAB's decision must be upheld.[8]

## IV. DISCUSSION

In support of its appeal, the DOJ raises two arguments. *First*, the DOJ contends the UIAB committed errors of fact and law when it found that Ms. Densten established good cause to voluntarily leave her employment.[9] *Second*, the DOJ argues that the UIAB's denial of its request for a continuance constituted an abuse of discretion.[10]

### A. Ms. Densten Had Good Cause to Terminate Her Employment

Pursuant to 19 *Del. C.* § 3314(1), an individual is disqualified from the receipt of unemployment compensation if "the individual left work voluntarily without good cause attributable to such work . . . ."[11] The phrase "left work voluntarily," means leaving on one's own volition, as opposed to being discharged.[12] Additionally, the employee must have had the conscious intention to terminate the employment.[13] "Whether an employee's voluntary

---

[4] *Hubbard v. Unemployment Ins. Appeal Bd.*, 352 A.2d 761, 763 (Del. 1976).
[5] *Thompson*, 25 A.3d at 782.
[6] *Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991).
[7] *Rishel v. Milford Hospitality*, 2015 WL 4719839, at *2 (Del. Super. Aug. 5, 2015).
[8] *Id.*
[9] DOJ's Op. Br. at 7.
[10] *Id.* at 14.
[11] 19 *Del. C.* § 3314(1).
[12] *Gsell*, 1995 WL 339026, at *3.
[13] *Id.*

4

resignation constitutes 'good cause' is a question of law and should be considered under the standard of a reasonably prudent person acting under similar circumstances."[14]

"Good cause for quitting a job must be such cause as would justify one in voluntarily leaving the ranks of the employed and joining the ranks of the unemployed."[15] Additionally, "[g]ood cause exists if the claimant demonstrates that her circumstances involve a substantial reduction in wages or hours or a substantial deviation in working conditions from the original agreement of hire."[16] By contrast, "unhappiness arising out of an unpleasant work environment, without more, does not constitute good cause."[17] The burden is on the employee to establish good cause attributable to the employment that justifies voluntarily leaving work.[18]

The Delaware Supreme Court recently defined good cause in the context of unemployment compensation in *Thompson v. Christiana Care Health Systems.*[19] For the purposes of unemployment compensation, good cause is established where: (1) an employee voluntarily leaves employment for reasons attributable to issues within the employer's control and under circumstances in which no reasonably prudent employee would have remained employed; and (2) the employee first exhausts all reasonable alternatives to resolve the issues before voluntarily terminating his or her employment.[20] With respect to the second prong, the Court explained:

> In order to exhaust all reasonable alternatives, the employee must at least notify the employer of the problem and request a solution. The employee must also bring the problem to the attention of someone with the authority to make the

---

[14] *Benjamin v. Net, Inc.*, 2013 WL 1091219, at *4 (Del. Super. Feb. 26, 2013).
[15] *Sandefur v. Unemployment Ins. Appeal Bd.*, 1993 WL 389217, at *4 (Del. Super. Aug. 27, 1993).
[16] *Lamberth v. Brandywine Counseling*, 2013 WL 3864504, at *5 (Del. Super. July 23, 2013) (internal quotation marks omitted).
[17] *Id.*
[18] *O'Neals's Bus Serv., Inc. v. Emp't Sec. Comm'n*, 269 A.2d 247, 249 (Del. Super. 1970).
[19] 25 A.3d 778, 783 (Del. 2011).
[20] *Id.*

necessary adjustments, describe the problem in sufficient detail to allow for resolution, and give the employer enough time to correct the problem.[21]

1. First Prong of the Good Cause Analysis

The DOJ contends that the UIAB's findings and conclusions do not support the first prong of the good cause analysis set forth in *Thompson*. The Court disagrees. At the hearing before the Board and the Appeals Referee, evidence was entered into the record indicating that Ms. Densten was denied her overtime request despite working late hours to finish projects for trial. When Densten met with Ms. Hasse to discuss the matter, she was told her request was denied because she did not obtain preapproval as mandated by DOJ policy. It was only after Ms. Densten submitted her resignation that the DOJ looked into the matter further and approved the request.

In *Sandefur v. Unemployment Insurance Appeals Board of State*, the plaintiff was required to work overtime after his relief failed to show up on time.[22] Shortly thereafter, the plaintiff terminated his employment due to the employer's failure to pay him for that overtime.[23] A few months later, the plaintiff received a notice of overpayment, which he appealed, claiming he had good cause to terminate his employment.[24]

On appeal, the court reasoned that "[a] substantial reduction in an employee's wage or pay constitutes a compelling and necessitous reason for voluntarily terminating employment."[25] The court held that a refusal to pay an employee for overtime is entirely within the employer's control and justifies a reasonably prudent employee leaving work voluntarily.[26] Delaware courts

---

[21] *Id.* (internal quotation marks and citations omitted).
[22] *Sandefur*, 1993 WL 389217, at *1.
[23] *Id.*
[24] *Id.* at *3.
[25] *Id.* at *4.
[26] *Id.*

have consistently held that a substantial reduction in one's pay establishes good cause to voluntarily terminate one's employment.[27]

The Board found that the DOJ's denial of Ms. Densten's overtime request was a substantial reduction in her pay. A review of the record indicates that in her role as a Trial Support Specialist, Ms. Densten often was given tasks at the last minute that required her to stay late. Also, during her eight-year tenure at the DOJ, Ms. Densten consistently was paid for overtime even though she did not obtain prior approval as required by DOJ policy. Accordingly, the Court finds that there is substantial evidence in the record to support the UIAB's conclusion that the DOJ's denial of Ms. Densten's overtime compensation constituted a substantial reduction in pay, thus satisfying the first prong of the good cause analysis.[28]

## 2. Second Prong of the Good Cause Analysis

The DOJ argues that the UIAB's finding that Ms. Densten exhausted all reasonable alternatives was erroneous as a matter of fact and law. Again, the Court disagrees. To demonstrate that all reasonable alternatives have been exhausted, an employee must show that she: (1) brought the problem to the attention of someone with the authority to make the necessary adjustments; (2) described the problem in sufficient detail to allow for resolution; and (3) gave the employer enough time to correct the problem.[29]

---

[27] *See Hopkins Constr., Inc. v. Del. Unemployment Ins. Appeal Bd.*, 1998 WL 960713, at *3 (Del. Super. Dec. 17, 1998) ("Good cause may consist of a substantial reduction in one's pay."); *Ament v. Rosenbluth Intern.*, 2000 WL 1610770, at *2 (Del. Super. Aug. 31, 2000) ("This Court has previously found that good cause exists (1) when an employer fails to pay wages; (2) when a decrease in claimant's wages renders claimant unable to earn a living; and (3) when claimant discussed decrease in wages with employer prior to quitting."); *Thompson*, 25 A.3d at 784 ("Good cause exists when [an employee's] ability to earn a living is jeopardized . . . .") (alteration in original) (citation omitted).

[28] *Sandefur*, 1993 WL 389217, at *4 ("A refusal to pay an employee for overtime strikes the Court as a very different situation than a simple wage reduction, and requires a different analysis. Where an employee is working for an hourly wage, to require the employee to work to attain an end result without paying the employee for all of the employee's time is not only unreasonable, but is contrary to federal law which requires a minimum hourly wage.").

[29] *See Thompson*, 25 A.3d at 783.

The record reflects that Ms. Densten met with Ms. Hasse and discussed the problems she was experiencing at the DOJ. In response, Ms. Hasse asked Ms. Densten if she had considered looking for a job outside of the DOJ. The UIAB found that this statement could be reasonably interpreted by Ms. Densten to mean she was out of options. In other words, Ms. Densten had exhausted all reasonable alternatives. Because this statement was made in close proximity of Ms. Densten's overtime denial, the Board found that she attempted to resolve the issues before terminating her employment.

Moreover, the DOJ's contention that Ms. Densten was required to report up the "chain-of-command" misstates the second prong of the good cause analysis. "While 19 *Del. C.* § 331[4] does not impose a strict requirement that an employee must exhaust all potential remedies before the employee may have good cause to quit, an employee does have an obligation to inform an employer of resolvable problems and to make a good faith effort to resolve them before simply leaving."[30]

Ms. Densten was required to bring the problem to someone *with* the authority to make the necessary adjustments and give that person enough time to correct the problem. The Board found that, as the DOJ's Human Resources Director, Ms. Hasse had the capability and authority to rectify Ms. Densten's situation.[31] Therefore, when Ms. Hasse suggested that Ms. Densten should consider looking for a job outside of the DOJ, it was reasonable for Ms. Densten to believe that this advice was Ms. Hasse's solution. Accordingly, the Court finds that the UIAB did not err when it applied the second prong of the good cause analysis. On the state of the record, there substantial evidence to support the UIAB's findings; its decision must be upheld.

---

[30] *See Dahling v. Sure Equip.*, 1995 WL 339181, at \*4 (Del. Super. May 10, 1995). Further, good cause is determined at the time of resignation.

[31] In fact, Ms. Hasse approved Ms. Densten's comp time request after she submitted her resignation. *See Robin S. Densten v. Dep't of Justice*, Appeal Docket No. 20929370, at 19:12-16 (Del. U.I.A.B. Aug. 13, 2014) (TRANSCRIPT).

8

*B. The UIAB's Denial of the DOJ's Request for a Continuance Was Not an Abuse of Discretion.*

The DOJ contends that the UIAB's denial of its request for a continuance was unreasonable and capricious. Pursuant to internal operating procedure, "[t]he grant or denial of any request for continuance or postponement is within the discretion of the Board Chairman or his or her designee."[32] Additionally, the party that attacks the UIAB's decision as unreasonable and capricious bears the burden of proof.[33] The DOJ has not shown that the UIAB's denial of its request for a continuance exceeds the bounds of reason in view of the circumstances and ignored recognized rules of law or practice so as to produce injustice.

Both parties offered extensive testimony at the hearing before the Appeals Referee, and the DOJ already had been granted a continuance. Furthermore, Ms. Densten's testimony at the hearing before the UIAB was limited to matters related to the only present witness, Ms. Hasse. Lastly, the DOJ has not asserted any specific effects the UIAB's denial of its continuance request would have on the outcome of the hearing. In light of the extensive testimony offered by both parties before the Appeals Referee and that the UIAB already granted the DOJ a continuance, the Court is not persuaded that the UIAB's denial of the DOJ's second request for a continuance exceeded the bounds of reason.

## V. CONCLUSION

This Court finds that the UIAB's decision is supported by substantial evidence and free from legal error. This Court also finds that the UIAB did not abuse its discretion by denying the DOJ's second request for a continuance. Accordingly, the decision of the UIAB is **AFFIRMED.**

**IT IS SO ORDERED.**

---

[32] 19 *Del. Admin. C.* § 1201-4.4.1.
[33] *K-Mart, Inc. v. Bowles*, 1995 WL 269872, at *2 (Del. Super. Mar. 23, 1995).