IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CIARA CARLTON, | : | |
| | : | C.A. No. K16A-05-002 WLW |
| Appellant, | : | Kent County |
| | : | |
| v. | : | |
| | : | |
| UNEMPLOYMENT INSURANCE | : | |
| APPEAL BOARD, | : | |
| | : | |
| Appellee. | : | |

Submitted: October 4, 2016
Decided: January 5, 2017

**ORDER**

Upon an Appeal from the Decision of the
Unemployment Insurance Appeal Board.
*Affirmed.*

Ms. Ciara Carlton, *pro se*

Paige J. Schmittinger, Esquire of the Department of Justice, Wilmington, Delaware; attorney for the UIAB.

WITHAM, R.J.

Appellant/Claimant Ciara Carlton has appealed a decision of the Unemployment Insurance Appeals Board (referred to here as the "UIAB" or the "Board"). The Board's decision disqualified Ms. Carlton from receiving unemployment insurance benefits. The Board based its decision on its conclusion that Ms. Carlton voluntarily left her employment with Integrity Staffing without good cause.

In her opening brief, Ms. Carlton argues that she should receive unemployment insurance benefits because she left her job at Integrity Staffing when her hours were reduced and the travel distance was too great. She also argues (apparently for the first time) that even though she left the job with Integrity Staffing voluntarily, she should still be entitled to unemployment insurance benefits based on her earlier employment with another company.

The Court has reviewed Ms. Carlton's opening brief and the record on appeal. For the reasons explained below, the decision of the Board is AFFIRMED.

## FACTS AND PROCEDURAL BACKGROUND

As required by law, this Court views the findings of the Board as conclusive as long as they are supported by the facts and there is no fraud.[1] The following summary is based upon the evidence and the Board's written findings.

Ms. Carlton was sent an email by Ms. Lynn Kharouf of Integrity Staffing on December 15, 2015. The email indicated that Ms. Carlton would start working at an Amazon.com work site located in Logan Township, New Jersey the next day. The

---

[1] 19 *Del. C.* § 3323(a).

2

email indicated that she would work nine-hour shifts Fridays through Tuesdays from 5 a.m. to 2:30 p.m. and be paid at a rate of $11.75 per hour.

The next day, Ms. Carlton received an email from Integrity Staffing indicating that she had been hired as a warehouse associate and providing similar information to the earlier email.

According to Ms. Carlton's answers on her Department of Labor Claimant Fact-Finding form, she left work with Integrity Staffing on Tuesday, January 12, 2016 due to a shortage of hours and increased transportation costs. Ms. Carlton went on to say that she "also left because [she] found a new place of employment that [was] closer to [her] home and [she was] pending work for that position."[2]

A Claims Deputy with the Department of Labor issued a Notice of Determination which indicated that Ms. Carlton was disqualified because she had been discharged for good cause when she resigned to accept another job. The Claims Deputy considered statements from both Ms. Carlton and Integrity Staffing.

Ms. Carlton appealed the decision to an Appeals Referee. At the hearing before the Appeals Referee, testimony was heard from both Ms. Carlton and a representative from Integrity Staffing. The representative from Integrity Staffing testified that Ms. Carlton had "signed a resignation form and it says on there that she found another job."[3] Ms. Carlton reiterated her answers from the Claimant Fact-Finding form, indicating that her hours were reduced by over twenty-five percent

---

[2] R. at 1.

[3] R. at 15.

because her shift length had been decreased from nine hours to three hours and finally to two-and-a-half hours. The referee asked Ms. Carlton if she had told her employer that her resignation was based on getting a new job:

> MS. CARLTON: . . . I was pending a hiring date, but I saw I had an interview for this job that was located in Felton, Delaware, but I was not hired yet.
> THE REFEREE: Okay. But that was the reason that you gave the employer for resigning?
> MS. CARLTON: There, yes. . . .[4]

According to evidence presented by Integrity Staffing, Ms. Carlton's hours showed no significant decrease. Over Ms. Carlton's five weeks with Integrity Staffing, her hours started around twenty-nine hours per week and remained over thirty-four hours per week until the last week, where she worked 12.25 hours. The employer explained this reduction by pointing out that Ms. Carlton resigned on the Tuesday of the final week, and thus she was not paid for the whole week's work. Ms. Carlton stated that she was only receiving three or four hour shifts.

The Referee's Decision modified the Claims Deputy's determination to clarify that Ms. Carlton voluntarily resigned and was not discharged by her employer. The Referee affirmed the determination in all other respects, however, because Ms. Carlton's resignation was based on finding employment elsewhere.

Ms. Carlton appealed the decision of the Referee to the full Board. The full Board heard her testimony and ultimately affirmed the Referee's decision.

---

[4] R. at 17.

Ms. Carlton then filed this appeal.

## STANDARD OF REVIEW

This Court reviews decisions by the Board to determine whether they are supported by substantial evidence and free from legal error.[5] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[6] This Court "does not weigh the evidence, determine questions of credibility or make its own factual findings."[7] It merely decides "if the evidence is legally adequate to support the agency's factual findings."[8] Absent an error of law, the Board's decision is reviewed for an abuse of discretion, and will not be disturbed where there is substantial evidence to support its conclusions.[9]

The question of whether the facts behind an employee's voluntary resignation suffice to constitute "good cause" is a question of law, which this Court reviews *de novo.*[10]

---

[5] *Mathis v. Del. River & Bay Auth.*, No. N11A10-002, 2012 WL 5288757, at *2 (Del. Super. Aug. 22, 2012).

[6] *Bradfield v. Unemp't Ins. Appeal Bd.*, No. S11A-05-004, 2012 WL 5462844, at *1 (Del. Super. Mar. 13, 2012) (quoting *Gorrell v. Div. of Vocational Rehab.*, No. 96A-01-001, 1996 WL 453356, at *2 (Del. Super. July 31, 1996)).

[7] *Annand v. Div. of Unemp't Ins. Appeal Bd.*, No. S10A-05-003, 2011 WL 2698620, at *1 (Del. Super. July 1, 2011) (quoting *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[8] *Bradfield*, 2012 WL 5462844, at *1 (quoting *McManus v. Christiana Serv. Co.*, No. 96A-06-013, 1997 WL 127953, at *1 (Del. Super. Jan. 31, 1997)).

[9] *Annand*, 2011 WL 2698620, at *1; *Potter v. Dep't of Corr.*, 80 A.3d 961 (Table), 2013 WL 6035723, at *2 (Del. Nov. 13, 2013).

[10] *Crews v. Sears Roebuck & Co.*, No. N10A-08-011, 2011 WL 2083880, at *2 (Del. Super. May 11, 2011) (citing *Dep't of Labor v. Unemp't Ins. Appeal Bd.*, 297 A.2d 412, 414 (Del. Super.

## DISCUSSION

The Delaware General Assembly has determined that the public good requires "the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no fault of their own."[11] Under the law that governs unemployment insurance, however, an individual is at least temporarily disqualified from receiving benefits when she leaves her job voluntarily and without "good cause," as our law defines it.[12] When an employee voluntarily leaves work, it is up to the employee (and not her employer) to show that she had "good cause" for voluntarily leaving her job.[13]

The Delaware Supreme Court has explained that courts must consider a two-part test to decide whether an employee had "good cause" to end her employment:

> [G]ood cause is established where: (i) an employee voluntarily leaves employment for reasons attributable to issues within the employer's control and under circumstances in which no reasonably prudent employee would have remained employed; and (ii) the employee first exhausts all reasonable alternatives to resolve the issues before voluntarily terminating his or her employment.[14]

In establishing the first part of the test, the employee must show that she is

---

1972)).

[11] 19 *Del. C.* § 3301.

[12] 19 *Del. C.* § 3314(1).

[13] *Potter*, 2013 WL 6035723, at *3 n.18 (citing *Lorah v. Home Helpers, Inc.*, 21 A.3d 596 (Table), 2011 WL 2112739, at *2 (Del. May 26, 2011)). Stated differently, it is the claimant's burden to show she had good cause for voluntarily terminating her employment. *Id.*

[14] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 783 (Del. 2011).

leaving for "such cause as would justify one in voluntarily leaving the ranks of the employed and joining the ranks of the unemployed."[15] A "substantial reduction" in hours will be enough to establish good cause if it is a "substantial deviation from the original employment agreement."[16] Of course, when an employee accepts a job on the understanding that a job is seasonal, that no particular number of hours are guaranteed, and that fewer hours are available off-season, a reduction in hours cannot be described as a "substantial deviation from the original employment agreement."[17]

To show the second part of the two-part test, an employee has an obligation to "inform an employer of resolvable problems and to make a good faith effort to resolve them before simply leaving."[18] That means an employee has to "bring the problem to the attention of someone with the authority to make the necessary adjustments, describe the problem in sufficient detail to allow for resolution, and give the employer enough time to correct the problem."[19]

In Ms. Carlton's case, the Board found that the reason she gave Integrity Staffing for her resignation was that she found a new job. It does not matter that Ms.

---

[15] *Id.* at 782 (quoting *O'Neal's Bus Serv., Inc. v. Emp't Sec. Comm'n*, 269 A.2d 247, 249 (Del. Super. 1970)).

[16] *Crews*, 2011 WL 2083880, at *2 (quoting *Performance Shop v. Unemp't Ins. Appeal Bd.*, No. 84A-MR-31, 1985 WL 188974, at *1 (Del. Super. Feb. 25, 1985)).

[17] *Molinaro v. Unemp't Ins. Appeal Bd.*, No. 03A-10-002, 2004 WL 2828048, at *2 (Del. Super. May 14, 2004).

[18] *Thompson*, 25 A.3d at 784 (quoting *Sandefur v. Unemp't Ins. Appeals Bd.*, 1993 WL 389217, at *4 (Del. Super. Aug. 27, 1993)).

[19] *Id.* at 785 (quoting *Calvert v. State*, 251 P.3d 990, 1001–02 (Alaska 2011)).

Carlton did not eventually get that new job. What mattered was the reason she gave to Integrity Staffing. Because the Board's decision was based on the evidence, including Ms. Carlton's own statements on the Claimant Fact-Finding form, her admissions at the hearings, and records provided by her, this Court is bound to accept it.

Having accepted the facts as found by the Board, this Court agrees with the Board's legal conclusion that getting a new job is not "good cause" under our law. Getting a new job is not "good cause" because it cannot be attributed to an issue within the employer's control. Instead, it lies entirely within an employee's control to decide whether to get a new job.

The Court notes that even if the facts were different—if, for example, Ms. Carlton really resigned because of the reduction in her hours—the Board's decision would be justified. Under that circumstance, the Board could have found (1) that the reduction in hours did not amount to a "substantial deviation from the original employment agreement" given the seasonal nature of holiday shipping and (2) that Ms. Carlton has not shown that she brought the reduction in hours to anyone's attention before simply resigning. The Court, however, does not need to go that far. The Board's factual finding is supported by the evidence, its legal conclusion is correct, and the Court accepts it without any changes.

Because Ms. Carlton voluntarily resigned without "good cause" as our law defines it, the Board rightly disqualified her from receiving benefits as required by 19 *Del. C.* § 3314(1).

This Court cannot consider Ms. Carlton's new argument that her old job with Children's Choice, Inc. qualified her for unemployment benefits. The Court can only consider the record on appeal, not new arguments that were never made to the Board in the first place.[20]

## CONCLUSION

The decision of the Unemployment Insurance Appeal Board is **AFFIRMED**. IT IS SO ORDERED.


/s/ William L. Witham, Jr.
Resident Judge


WLW/dmh

---

[20] Super. Ct. Civ. R. 72(g).