IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARRAH LEBOON ODELL, | § | |
| | § | No. 259, 2023 |
| Appellant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. K22A-09-001 |
| UNEMPLOYMENT INSURANCE | § | |
| APPEAL BOARD and DIVISION OF | § | |
| UNEMPLOYMENT INSURANCE, | § | |
| | § | |
| Appellees Below, Appellees. | § | |
| | § | |

Submitted: October 20, 2023
Decided: December 15, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the parties' briefs and the record in this case, it appears to the Court that:

(1) The appellant, Carrah LeBoon Odell, appeals the Superior Court's order affirming a decision of the Unemployment Insurance Appeal Board (the "UIAB" or the "Board") that upheld an appeals referee's decisions concluding that Odell was liable to repay overpaid unemployment benefits totaling $7,139. For the reasons stated below, we affirm.

(2)     The record reflects that Odell filed a claim for unemployment insurance benefits on April 4, 2021, after her employer, Allied Universal, reduced her hours.[1] She later obtained a second job at Rater Labs and reported income from both employers to the Department of Labor (the "Department") on a weekly basis.[2] Odell received traditional unemployment benefits of $191 per week for seventeen weeks between April 10, 2021, and July 31, 2021.[3] She also received $300 per week of supplemental Federal Pandemic Unemployment Compensation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act")[4] for the same period.[5]

(3)     It was later determined that Odell's total income during the period at issue was too high to qualify for unemployment benefits and that the benefits that she received therefore constituted an overpayment that was subject to recoupment by the Department.[6] The parties disputed why Odell had received benefits to which

---

[1] Appendix to Answering Brief at B-006.

[2] *Id.*

[3] *Id.* at B-025.

[4] The CARES Act was codified at 15 U.S.C. §§ 9001-9141 (2020). 15 U.S.C. § 9023 provided for an "[e]mergency increase in unemployment compensation benefits." For weeks of unemployment beginning after December 26, 2020, and ending on or before September 6, 2021, participating states would pay individuals who were entitled to unemployment compensation under state law an additional $300 per week of Federal Pandemic Unemployment Compensation. 15 U.S.C. § 9023(a), (b)(1), (b)(3).

[5] Appendix to Answering Brief at B-044.

[6] *See* 19 *Del. C.* § 3325 (governing recoupment of overpayments of unemployment insurance benefits). Except where otherwise specified, this order cites the version of Section 3325 that was in effect between August 29, 2019, and September 13, 2023. As discussed below, the statute was amended in September 2023 to authorize the Department to waive recovery of overpayments in certain circumstances.

2

she was not entitled. The Department asserted that Odell had fraudulently underreported her earnings. Odell admitted that she had mistakenly—but not fraudulently—reported her net earnings instead of her gross earnings. But because even her net wages were too high to qualify for benefits, she asserted that the Department's computer system must have calculated her benefits without recognizing the income that she reported from her second job. In any event, as discussed further below, the reason for the error does not change the outcome of this case.

(4) Delaware law requires an individual who receives unemployment benefits to which she was not entitled to repay the amount of the overpayment.[7] "The individual is liable regardless of whether the overpayment was received through fraud or mistake, or whether the individual was legally awarded the payment of benefits at the time but on appeal was subsequently found not to be entitled thereto."[8] The CARES Act similarly provides that if an individual received Federal Pandemic Compensation amounts to which they were not entitled, "the State shall require such individuals to repay the amounts of such Federal Pandemic Unemployment Compensation . . . to the State agency."[9] The state agency "may waive such

---

[7] *See id.* § 3325(a) ("If it is finally determined that an individual received benefits under this chapter for which the individual was not entitled, the individual shall repay, in cash, the amount of the overpayment to the Department for the Unemployment Compensation Fund.").

[8] *Id.*

[9] 15 U.S.C. § 9023(f)(2).

repayment if it determines that" the payment was made "without fault on the part of [the recipient]" and "repayment would be contrary to equity and good conscience."[10] In addition to the obligation to repay overpaid benefits, Delaware law provides that an individual shall be disqualified for benefits for one year if the recipient obtained the benefits through fraud.[11]

(5)     The statute establishes a bifurcated procedure by which the Department establishes that an overpayment occurred and then seeks to recoup the amount of the overpayment.[12]   In the first phase—the "eligibility phase"[13]—a Department claims deputy determines that the individual received benefits to which they were not entitled and, if applicable, the basis for and period of disqualification for benefits.[14] The recipient may appeal that determination; if the recipient does not timely appeal,

---

[10] *Id.*

[11] *See* 19 *Del. C.* § 3314(6) (providing, among other grounds for disqualification for benefits, for disqualification for one year if "the Department determines such individual has made a false statement or representation knowing it to be false or knowingly has failed to disclose a material fact to obtain benefits to which the individual was not lawfully entitled").

[12] *See Bradfield v. Unemployment Ins. Appeal Bd.*, 2012 WL 3776670, at *2 (Del. Aug. 31, 2012) (describing the "statutorily mandated bifurcated procedure" for recouping overpaid unemployment benefits); *see also Hockensmith v. Unemployment Ins. Appeal Bd.*, 2016 WL 5899237 (Del. Oct. 10, 2016) (discussing process of appealing from disqualification decisions and overpayment decisions).

[13] *See Tomer v. Jobe's Landscape, Inc.* 2012 WL 2344638, at *1 (Del. Super. Ct. June 14, 2012) (identifying the two phases of the unemployment appeal process as the "eligibility phase" and the "recovery phase").

[14] *See, e.g.*, *Bradfield*, 2012 WL 3776670, at *2 ("Under the statute, the [Department] must first issue a 'fraud disqualification determination,' which results in the termination of the recipient's benefits."); *Tomer*, 2012 WL 2344638, at *1-2 (discussing determination in first phase that recipient was ineligible for benefits that he had received).

the decision becomes final.[15]  In the second phase, which occurs "[o]nly after th[e eligibility] determination becomes final," the Department issues an "'overpayment determination[]' seeking recoupment of specific amounts."[16]  The benefits recipient has ten days to appeal the overpayment determination to an appeals referee.[17]  As to Federal Pandemic Unemployment Compensation, the CARES Act provides that a determination by a state agency regarding liability for an overpayment "shall be subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law, and only in that manner and to that extent."[18]

(6)    In the eligibility phase of this case, a Department claims deputy issued a fraud disqualification determination on January 28, 2022, finding that Odell had received benefits to which she was not entitled because she had fraudulently underreported her earnings.[19]  The claims deputy therefore determined that Odell was disqualified from receiving unemployment benefits for one year under 19 *Del. C.* § 3314(6).  Odell appealed.  On February 23, 2022, an appeals referee found that Odell had reported the wages that she received from both employers, but she mistakenly had reported net wages rather than gross wages.  The appeals referee

---

[15] *Bradfield*, 2012 WL 3776670, at *1, 2.
[16] *Id.* at *2.
[17] 19 *Del. C.* § 3325.
[18] 15 U.S.C. § 9023(f)(4).
[19] Appendix to Answering Brief at B-003-04.

5

therefore reversed the finding of fraud and disqualification for benefits.[20] The appeals referee found that Odell had received benefits to which she was not entitled, however, and held that she was required to "pay back the unearned benefits to the Department."[21] Odell did not further appeal that decision, and it therefore became final, concluding the eligibility phase of the proceedings.

(7) The matter then proceeded to the recovery phase. On March 23, 2022, a claims deputy issued two overpayment determinations, one relating to traditional unemployment benefits and one relating to Federal Pandemic Unemployment Compensation. The claims deputy determined that Odell had received an overpayment of traditional unemployment benefits in the amount of $2,039 between April 10, 2021, and July 31, 2021,[22] and an overpayment of Federal Pandemic Unemployment Compensation in the amount of $5,100 during the same period.[23]

(8) Odell appealed the overpayment determinations. On May 10, 2022, an appeals referee convened a hearing *de novo* at which the referee received testimony and other evidence from Odell and a Department representative. Odell admitted that she was ineligible for traditional unemployment benefits during the period at issue because her income was too high.[24] More specifically, she acknowledged that she

---

[20] *Id.* at B-006-07.
[21] *Id.* at B-007.
[22] *Id.* at B-008.
[23] *Id.* at B-010.
[24] *Id.* at B-080-81.

6

had inadvertently reported net wages instead of gross wages, but she admitted that even her net wages were too high to qualify for benefits.[25]  Odell asserted that a "glitch" in the Department's computer system caused her to receive benefits because it failed to recognize the income that she reported from her second job.[26]  She requested a waiver of the obligation to repay the benefits that she received, arguing that she met the conditions for a repayment waiver established by the United States Department of Labor's instructions to states regarding processing overpayment waivers under the CARES Act.[27]

(9)    The appeals referee determined that Odell had received $2,039 in traditional unemployment benefits to which she was not entitled and was liable to repay that amount.[28]  The referee also determined that, because Odell was ineligible for traditional unemployment benefits during the relevant period, she was ineligible for Federal Pandemic Unemployment Compensation for the same period.[29]  The referee therefore concluded that Odell had received an overpayment of $5,100 in

---

[25] *See id.* at B-080-81 ("I never should have been granted benefits in the first place. . . . I [could] make up to $286.50 before . . . being disqualified [for] benefits. . . .  For the very first claim[] date of 4/10/2021, my net earnings were $223.94 from Allied Universal, and $272.16 from [Rater] Labs.  That means I was paid $496.10 for that week, thus disqualifying me from benefits because I made $209.60 over my maximum dollar amount.").
[26] *Id.* at B-081-82.
[27] *Id.* at B-079-82.
[28] *Id.* at B-025-26.
[29] *Id.* at B-044-45.

7

Federal Pandemic Unemployment Compensation and was liable to repay that amount.[30]

(10)   Odell appealed to the Board.  She again conceded that she was ineligible for the benefits that she received.[31]  But she argued that her obligation to repay the benefits should be waived because the overpayment was not her fault but rather resulted from the computer system's failure to include her second income when calculating her eligibility.[32]  The Board affirmed the appeals referee's decision. The Board concluded that it was "inconsequential whether the Department made an error in calculating Claimant's reported wages or in dispersing [sic] unemployment insurance benefits to Claimant, because Claimant is still liable to repay any benefits she received to which she was not lawfully entitled."[33]  As to Odell's request for a waiver, the Board observed that "Delaware does not have a waiver program for unemployment insurance benefits."[34]

(11)   Odell appealed to the Superior Court.  The court affirmed the Board's decision.  The court determined that Odell's concessions that she mistakenly reported her net wages rather than her gross wages and that she was ineligible for unemployment benefits for the period at issue; and the evidence presented regarding

---

[30] *Id.*
[31] *See id.* at B-014 (stating that "after doing the math, I do not believe I qualified for benefits even with net wages").
[32] *Id.* at B-013-15.
[33] *Id.* at B-095 (citing 19 *Del. C.* § 3325).
[34] *Id.*

her benefits payment history constituted substantial evidence to support the Board's decision.[35] The court rejected Odell's contention that the Department violated its discovery obligations in the administrative proceedings and declined Odell's request to supplement the record with emails that she had exchanged with Department employees.[36] The court also determined that the Board did not err by not holding a separate evidentiary hearing before deciding Odell's appeal.[37] Finally, the court rejected Odell's arguments that the Department should have waived her repayment obligation. Among other things, the court held that Delaware law requires the Division to recover overpaid benefits, even where the overpayment resulted from a mistake, "regardless of who or what caused the mistake."[38]

(12) This appeal followed. "On appeal from the Superior Court's affirmance of a Board decision, this Court's review is limited to determining whether the Board's conclusions are supported by substantial evidence and are free from legal error."[39] Like the Superior Court, this Court considers the record in the light most

---

[35] *Odell v. Unemployment Ins. Appeal Bd.*, 2023 WL 4307685, at *2 (Del. Super. Ct. June 30, 2023).
[36] *Id.* at *3.
[37] *Id.*
[38] *Id.*
[39] *Hockensmith v. Unemployment Ins. Appeal Bd.*, 2016 WL 5899237, at *1 (Del. Oct. 10, 2016); *see also Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 781-82 (Del. 2011) ("Upon review of the Superior Court's reversal of a UIAB decision our function is limited to a determination of whether there was substantial evidence sufficient to support the UIAB's findings and whether they are free from legal error." (alterations, internal quotations, and citations omitted)).

9

favorable to the party that prevailed before the Board.[40] Neither we nor the Superior Court weigh the evidence, determine questions of credibility, or make our own factual findings.[41]

(13) Having carefully reviewed the record, the Court concludes that the Board's decision was supported by substantial evidence and free from legal error. Odell admitted to the appeals referee and to the Board that she received benefits to which she was not entitled because she was ineligible for benefits during the relevant period; she did not and does not claim that the overpayment amounts were incorrectly calculated.[42] She was therefore obligated to repay the amount of the overpayment, regardless of the cause of the overpayment.[43] Because Odell was

---

[40] *Thompson*, 25 A.3d at 782.

[41] *Id.*

[42] *See Hockensmith*, 2016 WL 5899237, at *2 ("Hockensmith does not dispute that she received notice of the Overpayment Decisions, and she does not claim that overpayment amounts were calculated incorrectly"). Odell also concedes her ineligibility on appeal. *See* Opening Brief at 9 ("[I]f the Appellees had gone back over the record of income, they would have determined that even though the wages were under-reported, Odell still should not have qualified for benefits because with the two incomes, her income would have been too high.").

[43] *See* 19 *Del. C.* § 3325(a) ("If it is finally determined that an individual received benefits under this chapter for which the individual was not entitled, the individual shall repay, in cash, the amount of the overpayment . . . . The individual is liable regardless of whether the overpayment was received through fraud or mistake . . . ."); Del. Div. Unemployment Ins., Claimant Handbook, at 9, 21 (informing claimants that repayment of overpaid benefits is required even if the overpayment resulted from a Division mistake"), *available at* https:// laborfiles.delaware.gov/main/dui/handbook/UI%20Claimant%20Handbook.pdf; Appendix to Answering Brief at B-61-62 (Odell's certification of familiarity with the Claimant Handbook). *Cf. also Teears v. Unemployment Ins. Appeal Bd.*, 2013 WL 1908688 (Del. May 7, 2013) (affirming decisions requiring repayment of Delaware unemployment benefits where claimant also received Pennsylvania benefits, despite argument on appeal that reimbursement should not be required because appellant "relied on the State of Delaware to know whether or not he was entitled to benefits and should not be penalized by the State of Delaware's mistake").

liable for the overpayment even if the overpayment resulted from a Department mistake, Odell's arguments concerning the Department's computer system and discovery relating to that system do not establish reversible error.

(14) Odell's argument that her repayment obligation should have been waived also does not establish reversible error. When the proceedings were pending before the Board and the Superior Court—and until after Odell filed her opening brief in this Court—Delaware law did not permit the Department to waive recovery of an overpayment. The CARES Act permits states to waive repayment of overpaid Federal Pandemic Unemployment Compensation in certain circumstances but does not require them to do so.[44] In administering the federal benefits, Delaware elected not to waive repayment obligations. On September 14, 2023, the Delaware Code was amended to permit the Department to waive recovery of overpayments, retroactively to March 15, 2020, under certain circumstances.[45] The amendments establish procedures for the submission and determination of waiver requests and authorize the Department to adopt additional regulations governing waivers.[46] Because repayment waivers were not available at the time of the proceedings below and she has not submitted a waiver request under the new statute, Odell's arguments

---

[44] *See* 15 U.S.C. § 9023(f)(2) (providing that states "shall require" repayments, except that a state "may" waive repayment under certain circumstances).
[45] H. Sub. 1 for H.B. 73, 152nd Gen. Assemb. (Del. 2023), *available at* https://legis.delaware.gov/BillDetail/140622.
[46] *Id.*

11

regarding waiver do not provide a basis for reversal. She might, however, be eligible to apply for a waiver in the future. If Odell applies for and is denied a waiver, the statute provides a right to appeal that decision to an appeals referee and then to the Board.[47]

(15) The Superior Court also did not err by declining to accept new evidence that was not submitted to the Board. In an appeal from the Board, "the Superior Court is limited to consideration of the record which was before the administrative agency."[48] In any event, because Odell is liable for repayment even if the overpayment resulted from a Department mistake, we do not discern how Odell's additional exhibits would change the result in this case.

(16) Finally, Odell's contention that she was illegally treated differently because she was a young woman is without merit and is not supported by the record. To the contrary, the record reflects that the Department pursued recoupment as required by the statute, regardless of her repeated pleas that repayment should be waived because of her youth and mistaken reporting of her net wages.[49]

---

[47] 19 *Del. C.* § 3325(h)(5) (effective Oct. 1, 2023, to present).
[48] *Hubbard v. Unemployment Ins. Appeal Bd.*, 352 A.2d 761, 763 (Del. 1976).
[49] Indeed, on appeal Odell continues to assert that overpayment should be waived because of her youth and personal circumstances. *E.g.*, Opening Brief at 20.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice