# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CONNIE NEECE,          )

         )    C.A. No. K21A-05-001 RLG

        Appellant,         )

         )

UNEMPLOYMENT INSURANCE    )

APPEAL BOARD & LOWES,        )

         )

        Appellees.         )

Submitted:  October 19, 2021
Decided:  January 14, 2022

## MEMORANDUM OPINION AND ORDER

**Upon Appellant's Appeal from a Decision of the Unemployment Insurance Appeal Board – REVERSED and REMANDED.**

Connie Neece, *Pro Se Appellant.*

Victoria Groff; Victoria W. Counihan, Esq.; Daniel Mulveny, Esq.; Department of Justice, Wilmington, Delaware.  *Attorneys for Appellee Unemployment Insurance Appeal Board.*

**GREEN-STREETT, J.**

## I.    Introduction

This appeal stems from a decision of the Unemployment Insurance Appeal Board (the "Board") affirming the findings of a Department of Labor Claims Deputy and an Appeals Referee that Appellant Connie Neece (the "Claimant") voluntarily left her employment with Lowes of Camden, Delaware (the "Employer" or "Lowes"), and, therefore, was not entitled to unemployment benefits. For the reasons set forth below, the Board's decision is **REVERSED and REMANDED**.

## II.    Factual and Procedural History

Claimant worked as a seasonal cashier at Lowes. As a seasonal employee, Claimant's hours were subject to fluctuation based on the store's sales. Consequently, Claimant could be scheduled to work a range of ten to forty hours per week. In November of 2020, Claimant resigned her position after learning that her hours had been drastically altered.

Claimant contends that, on the day she resigned, Employer scheduled her to work zero hours for the following two weeks. Employer disputes this claim. Employer asserts that, although Claimant's hours had been reduced, they were never eliminated entirely.

Claimant filed a claim for unemployment benefits with the Delaware Department of Labor Division of Unemployment Insurance on November 8, 2020. A Claims Deputy denied the claim, finding that Claimant was disqualified from

receiving benefits because she voluntarily quit her job without good cause attributable to her work. Claimant then filed an appeal of the Deputy's decision. An Appeals Referee held a hearing on February 16, 2021, and later affirmed the Deputy's decision. Claimant then appealed the Referee's decision to the Board.

The Board held a telephonic hearing on April 7, 2021 (the "Hearing"). Rosa Whalen ("Employer's Representative") attended on behalf of Employer. After hearing testimony from both Claimant and Employer's Representative, the Board affirmed the Referee's decision, finding that Claimant voluntarily quit because she was "dissatisfied with the number of hours" she had been scheduled to work.[1] As a result, the Board concluded that Claimant failed to show good cause for voluntarily resigning from her position.

Claimant appealed to this Court, asserting, on a substantive level, that she possessed the requisite good cause to terminate her employment with Lowes because (1) Employer completely eliminated her hours; and (2) management was unable to tell Claimant when she would be scheduled to work in the future.  On a procedural level, Claimant argued that (1) the Board rushed the Hearing; (2) she was unable to question anyone during the Hearing; and (3) the witnesses who attended the Hearing

---

[1] Record, "Notice of Board Decision," at 7.

were not involved in the discussions she held with her managers on the day she resigned from Lowes.

## III. Standard of Review

When reviewing an appeal of a decision by the Board, the Superior Court's role "is limited to a determination of whether there was substantial evidence sufficient to support the findings of the Board."[2] Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Thus, "[t]he Superior Court does not independently weigh the evidence, determine questions of credibility[,] or make its own factual findings."[4] Rather, the Court "merely determines if the evidence is legally adequate to support the agency's factual findings and whether errors of law exist."[5] The Court considers the record in the light most favorable to the party that prevailed on the Board's appeal.[6]

---

[2] Crews v. Sears Roebuck & Co., 2011 WL 2083880, at *2 (Del. Super. May 11, 2011) (internal quotation marks omitted) (quoting Unemployment Ins. Appeals Bd. v. Duncan, 337 A.2d 308, 309 (Del. 1975)).

[3] Lorah v. Home Helpers, Inc., 21 A.3d 596, 2011 WL 2112739, at *2 (Del. May 26, 2011) (TABLE) (citing Oceanport Indus., Inc. v. Wilmington Stevedores, Inc., 636 A.2d 892, 899 (Del. 1994)); see also Lively v. Dover Wipes Co., 2003 WL 21213415, at *1 (Del. Super. May 16, 2003) (quoting Onley v. Cooch, 425 A.2d 610, 614 (Del. 1981) (defining "substantial evidence" as "more than a scintilla but less than a preponderance[.]")).

[4] Lorah, 2011 WL 2112739, at *2 (citing Johnson v. Chrysler Corp., 213 A.2d 64, 66 (Del. 1965)).

[5] Molinaro v. Unemployment Ins. Appeal Bd., 2004 WL 2828048, at *1 (Del. Super. May 14, 2004) (citing 19 Del. C. § 3323).

[6] Thompson v. Christiana Care Health Sys., 25 A.3d 778, 782 (Del. 2011).

## IV. Discussion

Under 19 Del. C. § 3314(1), an individual does not qualify for unemployment benefits when he or she leaves work "voluntarily without good cause attributable to such work."[7] In this type of "voluntary quit" situation, the claimant bears the burden of proving her entitlement to unemployment compensation.[8] The Delaware Supreme Court has found that "good cause" exists when (1) an employee voluntarily leaves employment for reasons attributable to issues within the employer's control and under circumstances in which no reasonably prudent employee would have remained; and (2) the employee first exhausts all reasonable alternatives to resolve the issues before voluntarily terminating his or her employment.[9]

### A. Good Cause

### 1. Claimant's Voluntary Resignation

First, the Court will address Claimant's substantive argument. Claimant contends that, because Employer completely eliminated her working hours for two weeks, she possessed the requisite "good cause" to leave her employment voluntarily. Good cause is defined as "such cause as would justify one in voluntarily leaving the ranks

---

[7] Morales v. Dollar Tree Stores, Inc., 2021 WL 3523927, at *2 (Del. Super. Aug. 9, 2021) (citing 19 Del. C. § 3314(1)).

[8] White v. Security Link, 658 A.2d 619, 622 (Del. Super. 1994).

[9] Thompson, 25 A.3d at 783.

of the employed and joining the ranks of the unemployed."[10] This Court has found good cause when the claimant experienced "a substantial reduction in wages, work hours[,] or a substantial deviation in the working conditions from the original agreement of hire[.]"[11] However, "unhappiness arising out of an unpleasant work environment, without more, does not constitute good cause," for purposes of 19 Del. C. § 3314(1).[12]

Here, the Board determined that Claimant resigned because she was dissatisfied with the reduction in her hours.[13] This Court reached a similar conclusion in Crews v. Sears Roebuck & Co.[14] In Crews, the claimant was a part-time employee who was guaranteed only three hours of work per week.[15] When claimant's work schedule was reduced from forty hours to sixteen hours per week, she quit and filed for unemployment benefits.[16] The Court concluded that, given claimant's guarantee of only three hours per week, the reduction in claimant's hours did not amount to a

---

[10] O'Neal's Bus Serv., Inc. v. Employment Sec. Comm'n, 269 A.2d 247, 249 (Del. Super. 1970) (citing Zielenski v. Bd. of Review, 203 A.2d 635 (N.J. Super. Ct. App. Div. 1964)).

[11] Molinaro, 2004 WL 2828048, at *1 (internal quotation marks omitted) (quoting Weathersby v. Unemployment Ins. Appeal Bd., 1995 WL 465326, at *5 (Del. Super. June 29, 1995)).

[12] Thompson, 25 A.3d at 784.

[13] Id.; Delaware Courts have ruled that an employee's dissatisfaction with a reduction in his or her working hours does not constitute good cause for the purpose of unemployment benefit eligibility. See Molinaro, 2004 WL 2828048, at *2.

[14] 2011 WL 2083880, at *3.

[15] Id. at *1-2.

[16] See id. at *1.

"substantial deviation from the original employment agreement."[17] Because an employee's dissatisfaction with a reduction in his or her hours, without more, does not constitute good cause, the Court concluded that claimant's voluntary resignation disqualified her from receiving unemployment benefits.[18]

Like the claimant in Crews, the Claimant in this case was not a full-time employee with a guarantee of forty hours of work per week.[19] Instead, Claimant was hired as a "seasonal employee," and was informed that she would be scheduled to work "anywhere from 10 to 40 hours" per week.[20] At the Hearing, Claimant admitted that, during her new-hire orientation, she was made aware of the possibility of an hours reduction given her seasonal employment status.[21]

However, this case is notably distinguishable from Crews. In that case, the claimant's hours were drastically reduced, but were never entirely eliminated.[22] Further, the reduction in hours was consistent with the claimant's employment contract as a part-time employee, which guaranteed only three hours of work per

---

[17] Id. at *3 (internal quotation marks omitted) (quoting Performance Shop v. Unemployment Ins. Appeal Bd., 1985 WL 188974, at *1 (Del. Super. Feb. 25, 1985)).

[18] Id. at *3.

[19] Record, "Transcript of Proceedings Before the Unemployment Insurance Board," at 23:5-9.

[20] Id. at 26:2-4.

[21] Id. at 23:6-9.

[22] Crews, 2011 WL 2083880, at *1.

7

week.[23] In contrast, the Claimant in this case was hired with the understanding that, as a seasonal employee, her hours could fluctuate.[24] However, Claimant testified that she was never informed, either by the managers who hired her or the managers that conducted her new-hire orientation, that her hours could be completely eliminated.[25] Rather, Claimant understood that she would be scheduled to work at least ten hours per week.[26] This understanding was confirmed by Employer's Representative's testimony at the Hearing.[27] Consequently, the evidence indicates that the total elimination of Claimant's working hours was not contemplated by her original employment agreement.

Here, there is a factual dispute as to whether Claimant's hours were merely reduced or entirely eliminated. At the Board's hearing, Employer's Representative testified that "[i]n no way was [Claimant] not provided any hours."[28] In contrast, Claimant testified that, in October of 2020, she reviewed the schedule and realized that she was not scheduled to work at all in the upcoming two weeks.[29]

---

[23] Id. at *3.

[24] Record, "Transcript of Proceedings Before the Unemployment Insurance Board," at 23:5-13.

[25] Id. at 23:6-8.

[26] Id. at 24:14-16.

[27] Id. at 25:18-20 ("[S]easonal runs anywhere from 10 to 40 hours based on the needs of the store.").

[28] Id. at 26:4-6.

[29] Record, "Transcript of Proceedings Before Kathleen D. Smith, Appeals Referee," at 52:3-6.

As discussed above, this Court has ruled that a mere *reduction* in one's hours, without more, is insufficient to establish good cause to quit voluntarily.[30] Thus, if Claimant's hours were merely reduced, as contemplated by her seasonal employment agreement, she likely lacked good cause to terminate her employment voluntarily.[31] However, if Claimant's hours were entirely eliminated – a condition that was not contemplated as part of her original employment agreement – she likely would satisfy the first prong of the good cause analysis.[32] The resolution of this factual dispute is crucial to the determination of Claimant's unemployment benefit eligibility.

After hearing the conflicting testimonies of Claimant and Employer's Representative, the Board concluded that Claimant left her job because she was "dissatisfied with the number of hours" she had been scheduled to work.[33] Yet, in reaching this conclusion, the Board failed to resolve the factual dispute of whether Claimant's hours were reduced in accordance with her seasonal employment contract or instead eliminated entirely. Although the Board's decision acknowledges that Claimant believed "she had good cause to resign after receiving zero hours of

---

[30] Molinaro, 2004 WL 2828048, at *2 (finding no good cause when the employee, who was hired in a seasonal position and with the understanding that hours would be given as available, quit after his working hours were reduced).

[31] Id.

[32] Weathersby, 1995 WL 465326, at *5.

[33] Record, "Notice of Board Decision," at 7.

work," it does not explain why it chose to disregard this testimony in reaching its decision.[34] Further, Employer's Representative testified that "[i]n no way was [Claimant] not provided any hours," and stated that she supplied documentation to the Board that would substantiate this assertion.[35] Despite the fact that Employer's Representative expressly referenced this document during her testimony at the Hearing and "supplied" it to the Board,[36] it was not referenced in the Board's opinion and was not included as part of the Record provided to this Court.

On October 14, 2021, this Court sent a letter to the Board, ordering it to provide the documentation explicitly referenced by Employer's Representative within the Record.[37] Believing that this document assisted the Board in reaching its conclusion, the Court was concerned that the document's absence from the Record was perhaps an inadvertent oversight. However, in response to the Court's Order to produce this document, the Board revealed two pertinent points: (1) Employer's Representative provided this document to the Board and its legal representative prior to the Hearing; and (2) the Board purposely did not include the documentation within the Record because the Board did not "see a need" to admit the document into

---

[34] Id.

[35] Record, "Transcript of Proceedings Before the Unemployment Insurance Board," at 26:4-6.

[36] Id.

[37] Specifically, the Court sought documentation referenced on pages 25-26 of the transcript from the April 7, 2021, Hearing before the Board.

10

evidence or consider it within its decision.[38] As discussed above, the factual determination of whether or not Claimant's hours were completely eliminated or reduced in accordance with her seasonal employment contract is crucial to the determination of Claimant's benefit eligibility. Here, not only did the Board fail to resolve this factual dispute in its opinion, but it also purposely omitted and refused to consider documentation that would have undoubtedly provided relevant insight about Claimant's disputed work schedule.

"Although [this Court's] standard of review of a decision by the Board is deferential, it is not altogether without teeth."[39] Thus, although this Court may not make its own factual determinations or weigh the credibility of witnesses, it cannot defer to a decision by the Board that fails to reflect a rational consideration of the evidence.[40] As noted by this Court and the Delaware Supreme Court, "the Board cannot simply ignore substantial and relevant evidence without an explanation."[41] The Record provided to the Court, and the Board's opinion within it, fail to address, without any form of explanation, the documentation submitted by the Employer's

---

[38] Letter from Victoria Groff to the Superior Court (Oct. 19, 2021).

[39] Murphy & Landon P.A. v. Pernic, 121 A.3d 1215, 1217 (Del. 2015).

[40] Id. at 1224.

[41] Igo v. ACTS Ret. Life Communities, 2021 WL 37461, at *4 (Del. Super. Jan. 5, 2021) (citing Murphy & Landon P.A., 121 A.3d at 1224).

Representative. In this case, the Court is alarmed by the Board's apparent cherry-picking of evidence to present in the Record on appeal.

It is outside of this Court's authority to make its own factual determinations necessary in evaluation of Claimant's appeal.[42] Rather, "the Court must base its decision on appeal by examining the record below to determine whether substantial evidence supports the Board's findings."[43] In doing so, the Court "will not intrude on [the Board's] role as trier of fact by disturbing the [Board's] credibility determinations or factual findings."[44] However, the Board's findings must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[45] Based on the Record provided by the Board, it is difficult for this Court to ascertain whether Claimant's hours were entirely eliminated or instead reduced in accordance with her seasonal employment agreement. Without these key pieces to the puzzle, the Court cannot conclude that the Board's determination was reasonably based on substantial

---

[42] Sutton v. Unemployment Ins. Appeal Bd., 2010 WL 1367757, at *2 (Del. Super. Jan 15, 2010) (remanding when the Board failed to make the necessary factual determinations regarding the timeliness of Claimant's appeal).

[43] Becker v. Unemployment Ins. Appeal Bd., 1994 WL 466236, at *2 (Del. Super. Aug. 15, 1994).

[44] Toribio v. Peninsula United Methodist Homes, Inc., 2009 WL 153871, at *1 (Del. Super. Jan. 23, 2009) (citing Connections Cmty. Support Programs, Inc. v. Bantum, 2001 WL 1628474, at *2 (Del. Super. Mar. 30, 2001)).

[45] Thompkins v. Reynolds Transp., 2021 WL 99729, at *3 (Del. Super. Jan. 11, 2021) (internal quotation marks omitted) (quoting Toribio, 2009 WL 153871, at *2).

evidence.[46] Accordingly, the Board's findings do not withstand appellate review and must be addressed on remand.

## 2. Claimant's Exhaustion of Available Remedies

The two-prong test for good cause is conjunctive.[47] The second prong addresses whether Claimant exhausted all available remedies before terminating her employment.[48] To satisfy this prong of the analysis, the claimant must have made "a good faith effort to work with her employer and give the employer a reasonable amount of time to address her concerns before terminating her employment."[49] Simply put, "the employee must at least notify the employer of the problem and request a solution."[50] Although the claimant need not report the issue up the entire "chain-of-command," she must "bring the problem to someone with the authority to make the necessary adjustments[.]"[51]

---

[46] Cavallaro v. Securitas Sec., 2006 WL 2848106, at *3 (Del. Super. Sept. 28, 2006); see also Konstantopoulos v. Unemployment Ins. Appeal Bd., 1991 WL 53452, at *1 (Del Super. Apr. 2, 1991) (remanding when the Board failed to "make adequate findings of fact and conclusions of law as to several pivotal issues" in the case); Harper v. Unemployment Ins. Appeal Bd., 293 A.2d 813, 816 (Del. Super. 1972) (remanding when the Board failed to make factual determinations that were necessary to analyze claimant's eligibility for unemployment benefits).

[47] Thompson, 25 A.3d at 783.

[48] Id. Because the Board concluded that Claimant did not possess the requisite good cause to voluntarily terminate her employment, it did not address the test's second prong in its opinion.

[49] Morales, 2021 WL 3523927, at *2 (citing Thompson, 25 A.3d at 784).

[50] Thompson, 25 A.3d at 784-85.

[51] Dep't of Justice v. Unemployment Ins. Appeal Bd., 2016 WL 3742158, at *4 (Del. Super. July 6, 2016) (quoting Thompson, 25 A.3d at 783).

While this Court is unable to decide good cause without resolution of the issues raised above, the Court finds that Claimant satisfies the second prong of the test. The record reflects that Claimant exhausted the available remedies before submitting her letter of resignation. Claimant brought the scheduling issue to the attention of her manager, an individual "with the authority to make the necessary adjustments."[52] This manager did not inform Claimant that she should bring the issue to human resources or attempt to address it through an alternative administrative avenue. Rather, the manager definitively told Claimant that the scheduling issue would not be resolved.[53] Soon after this discussion, two managers instructed Claimant that she should submit a letter of resignation.[54] Thus, after informing her employer of a resolvable problem and making a good faith effort to resolve it, Claimant was faced with two options: (1) continue her employment at Lowes, with the understanding that she would not be scheduled to work and, therefore, would not receive a paycheck; or (2) resign from her position and seek employment elsewhere. Faced with these choices, Claimant resigned.

This Court finds that it was reasonable for this Claimant to believe, based on her managers' directive to submit a resignation letter, that the termination of her

---

[52] Id.

[53] Record, "Transcript of Proceedings Before the Unemployment Insurance Board," at 23:1-2.

[54] Record, "Transcript of Proceedings Before Kathleen D. Smith, Appeals Referee," at 53:20-22.

employment was Employer's proposed solution to Claimant's scheduling problem. Accordingly, Claimant exhausted all reasonable alternatives in an attempt to resolve the scheduling issue before voluntarily terminating her employment. Thus, Claimant has satisfied the second prong of the good cause analysis.

## B. Due Process

Claimant contends that the Board denied her due process during the Hearing.[55] However, because the Court finds that the above-referenced factual issues must be addressed by the Board on remand, it need not reach the issue of Claimant's due process claims.

## V. Conclusion

The Board's conclusions must be reviewed with great deference by this Court. However, those conclusions must be free from legal error, be supported by substantial evidence, and reflect a rational consideration of the record.[56] Here, the Record fails to provide insight into Claimant's hours reduction or elimination. This lack of clarity centers around a document that was referenced, but not included in the Record. Moreover, although this document contained pertinent information, the Board purposely disregarded it when rendering its opinion. The Board's refusal to

---

[55] Specifically, she contends that (1) the Board rushed the Hearing, which lasted only ten minutes; (2) during the Hearing, Claimant was not given the opportunity to question the witnesses who testified on Employer's behalf; and (3) the witnesses who testified on behalf of Employer were inappropriate because they had not been present during Claimant's discussions with the managers regarding her reduction in working hours.

[56] Thompkins, 2021 WL 99729, at *4.

consider this relevant evidence and include it within the Record constitutes legal error.[57] Perhaps once the Record is better developed, and the factual discrepancies addressed, it will be evident whether there is substantial evidence to support the conclusion that Claimant should be disqualified from receiving unemployment benefits pursuant to 19 Del. C. § 3314.

Accordingly, the decision of the Board is **REVERSED and REMANDED** for further proceedings consistent with this opinion.


**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

---

[57]See Igo, 2021 WL 37461, at *4 (reversing when the Board ignored relevant information referenced during the Claimant's testimony and failed to address pertinent factual disputes in its opinion).