**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

KATHY ANN BARRY,     :
           :  C.A. No.: K25A-02-001 JJC
    Appellant,  :
           :
    v.      :
           :
UNEMPLOYMENT INSURANCE  :
APPEAL BOARD and AT HOME  :
INFUCARE, LLC.,      :
           :
    Appellees.   :

Submitted: June 6, 2025
Decided:  August 14, 2025

## <u>ORDER</u>

On this 14th day of August 2025, having considered Appellant Kathy Ann Barry's appeal of the decision of the Unemployment Insurance Appeal Board (hereinafter, the "Board" or "UIAB"), the parties' briefing, and the UIAB's record, it appears that:

1. Ms. Barry appeals the UIAB's determination that she voluntarily left her employment with At Home Infucare LLC (hereinafter, the "Agency" or the "Employer") without good cause. The UIAB found that she voluntary resigned and was thereby disqualified from receiving unemployment insurance benefits.

2. The facts of record are undisputed. They derive from the Appeals Referee hearing below and the additional evidence presented directly to the UIAB during the appeal of the Referee's decision. The record demonstrates that Ms. Barry worked part

1

time for the Agency as a "consumer direct chore aid."[1]  In that capacity, she earned approximately $14.50 per hour as a live-in caretaker for a single client.[2]  Her approximately five-year employment with the Agency began when she brought her client with her to the Agency under the Medicaid Consumer Directed Care program.[3]  Medicaid dollars funded Ms. Barry's position under that program.[4]

3.     Ms. Barry had acknowledged in writing that her employment with the Agency was "contingent on the continuity of a service relationship with the client."[5]  In other words, her employment was based on the client's continued choice of her as a caretaker.[6]  Nevertheless, the Agency served as Ms. Barry's "Employer of Record."  To that end, the Agency provided Ms. Barry and the client financial and administrative support.[7]  The Agency also furnished the client with a registered nurse to provide medical care on a regular basis.[8]

4.     Ms. Barry alleged in both the Referee hearing and the UIAB hearing that the client, who was an alcoholic, became physically abusive.[9]  Furthermore, she contended that others living in the home used cocaine and engaged in illegal activities.[10]  She alleged that when she brought these circumstances to the Agency's attention, the Agency did not help her.  In response, the Agency's representative, who testified at both hearings, provided evidence that the Agency offered her additional training toward placement in another home with a new client.[11]  That newly offered

---

[1] Tr. of Ref. Hr'g at 9:2 [hereinafter the Court will refer to the Board's certified record as "R. at …"].
[2] R. at 80.
[3] R. at 89.
[4] R. at 37.
[5] R. at 18–19, Emp.'s Ex. 1.
[6] *Id.*
[7] *Id.*
[8] R. at 34.
[9] R. at 83–85.
[10] R. at 84.
[11] R. at 44–45, 88–89

role, as a home health care aid, involved increasing her skill level with a concomitant pay increase.[12] Ms. Barry declined the offer, however, and resigned.[13]

5.    Thereafter, Ms. Barry filed a claim for unemployment benefits. She initially failed to respond to a Division of Unemployment Insurance (hereinafter, the "Division") request for further information.[14] As a result, the Division's claims deputy based his decision on only the evidence presented by the Agency. The deputy determined that Ms. Barry had resigned without first exhausting her administrative remedies with the Employer and was thereby disqualified from unemployment benefits.[15]

6.    Ms. Barry then appealed the claims deputy's decision to an appeals referee (hereinafter, the "Referee"). Both Ms. Barry and the Employer's representative, Brianna Henriquez, testified at that hearing. Ms. Henriquez testified that the Agency suggested that Ms. Barry take a reasonably priced course, at her own expense, which would then have meant a promotion, a new client, and a pay raise.[16] Ms. Barry testified that she sought treatment immediately after her resignation for substance abuse issues, however, and declined to take the suggested course or accept the new client.[17] Her self-directed inpatient treatment included an approximately two-month hospitalization.[18] Although the Referee recognized the legitimacy of Ms. Barry's poor working conditions, she found that (1) Ms. Barry had independently resigned for personal reasons attributable to her mental and physical health, and (2) that she had not exhausted all reasonable alternatives before doing so.[19] As a result, the Referee

---

[12] R. at 44–45.
[13] R. at 88–89.
[14] R. at 116.
[15] *Id.*
[16] R. at 89.
[17] R. at 85.
[18] *Id.*
[19] R. at 70.

3

affirmed the claims deputy's decision because Ms. Barry failed to establish by a preponderance of the evidence that she left her employment for good cause.[20]

7. Thereafter, Ms. Barry appealed the Referee's decision to the UIAB. There, she maintained that she had good cause to resign. To that end, she testified that she suffered physical abuse in the home and was exposed to other illegal activities.[21] She further testified that the Agency failed to identify a supervisor or designate a point of contact for her to report those problems.[22] In response, Ms. Henriquez presented the "Consumer Direct Program Acknowledgement" form, which contained Ms. Barry's written acknowledgement that she understood the terms of her employment.[23] Ms. Henriquez testified that she was "shocked" when Ms. Barry informed her that she was resigning to get treatment because the Agency had offered to help place her with another client.[24]

8. The UIAB found that the issues that arose in the home were not within the Employer's control.[25] Additionally, the Board determined that Ms. Barry resigned to pursue personal medical and mental health treatment and that she failed to exhaust all reasonable alternatives with the Employer before she resigned. That is, she refused to take a class identified by the Agency that would have qualified her to work as a home health care aid and to be placed with another client at increased pay. Accordingly, the Board found Ms. Barry to be disqualified from unemployment benefits because she voluntarily left her employment without good cause.

---

[20] *Id*. at 68.
[21] R. at 25, 45.
[22] R. at 25
[23] R. at 32–33.
[24] R. at 39.
[25] R. at 8.

9. Presently, Ms. Barry appeals the UIAB's decision.[26] She contends on appeal that: (1) the Agency did not appropriately intervene when she suffered abuse at the hands of her client, and (2) she had exhausted all reasonable alternatives before leaving the Agency.[27]

10. In an appeal of a UIAB decision, the Court must review the record to determine whether substantial evidence supported the Board's decision and whether the Board committed legal error.[28] Substantial evidence refers to relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."[29] It is more than a scintilla of evidence but less than a preponderance.[30] The Court must consider the facts in the light most favorable to the prevailing party below when performing its review.[31] It cannot make its own factual findings or assess witness credibility.[32] Rather, it reviews the record only for legal errors and to assess whether the UIAB's findings are supported by the record.[33] At a higher level, the Court must uphold the decision of the UIAB unless the UIAB acted arbitrarily or capriciously, or its decision exceeded the bounds of reason.[34]

11. The Court must also consider the substantive standard applied by the UIAB when determining whether substantial evidence supported the UIAB's decision. Subsection 3314(1) of Title 19 of the Delaware Code disqualifies an employer from receiving unemployment benefits if he or she voluntarily left his or her job without

---

[26] Notice of Appeal (D.I. 1).
[27] Opening Br. at 1–2 (D.I. 9).
[28] *Unemployment Ins. Appeal Bd. Of Dept. of Labor v. Duncan*, 337 A.2d 308, 309 (Del. 1975); *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 781–82 (Del. 2011).
[29] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).
[30] *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013).
[31] *Pochvatilla v. U.S. Postal Serv.*, 1997 WL 524062, at *2 (Del. Super. June 9, 1997).
[32] *Sokoloff v. Bd. of Med. Prac.*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010).
[33] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).
[34] *PAL of Wilmington v. Graham,* 2008 WL 2582986, at *4 (Del. Super. June 18, 2008).

good cause attributable to the work. The employee bears the burden of proving good cause by a preponderance of the evidence.[35] The Delaware Supreme Court has elaborated on what provides an employee good cause to leave – namely, reasons that are within the *employer's* control that would compel any reasonably prudent employee to leave.[36] The employee must also exhaust all reasonable alternatives before resigning.[37] As a final benchmark, an unpleasant work environment does not alone constitute good cause to resign.[38]

12. Here, Ms. Barry alleges no error of law. Rather, she contends that the record below demonstrated that she had good cause to resign. She also asserts that she was forced to resign because of circumstances within the Employer's control.[39]

13. In support, Ms. Barry first proffers that the Agency's nurse visited too infrequently and failed to monitor her client's decline in health, which contributed to the untenable working conditions.[40] On the contrary, the record demonstrates that a nurse visited the home approximately every two weeks and completed a supervisory visit form for each visit.[41] The nurse also advised Ms. Barry, on one occasion, to call the police regarding the alleged criminal activity in the home and the alleged abuse by the client.[42] Taken together, these facts constituted substantial evidence from which the Board could conclude that the nurse's allegedly deficient conduct did not make Ms. Barry's working conditions untenable.

---

[35] *Briddell v. Dart First State*, 2002 WL 499437, at *3 (Del. Super. Mar. 28, 2002) (citing *Petty v. Univ. of Delaware*, 450 A.2d 392, 395 (Del. 1982)).
[36] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 783 (Del. 2011).
[37] *Id.*
[38] *Id.*
[39] D.I. 9 at 1–2.
[40] Reply Br. (D.I. 15).
[41] R. at 34.
[42] R. at 34.

14. Ms. Barry next contends that the Employer failed to designate a point of contact for seeking help. She also contends that the Employer declined to address the matter when she eventually reported it. The record, however, contains no evidence regarding what action, if any, Ms. Barry requested the Employer to take. To the contrary, the record supports the Board's finding that the Employer took reasonable action where the employment relationship centered on live-in services for only one client. Namely, the Agency's role was limited to facilitating financial and administrative matters and providing skilled nursing services. Again, Ms. Barry brought the client to the Agency through the Medicaid Consumer Directed Care Program and the client was Ms. Barry's direct supervisor.[43]

15. Lastly, Ms. Barry contends that she exhausted all reasonable alternatives before she resigned. The record adequately supports the Board's findings that she did not. Namely, Ms. Barry spoke with both Ms. Henriquez and the visiting nurse, and when she notified them, the Agency provided Ms. Barry the option of continued employment with a new client.[44] The Agency was under no obligation under the employment relationship to provide her a new client or a pay increase.[45] Nevertheless, it attempted to do both. Because Ms. Barry undisputedly declined the offer, the Board justifiably determined that she failed to exhaust all reasonable alternatives.

16. On balance, the record contains evidence sufficient for a reasonable mind to conclude that Ms. Barry voluntarily resigned from her employment without good cause. The record also supports the UIAB's finding that the Agency had no control over an unpleasant working environment caused by a client who Ms. Barry brought with her to the Agency. Substantial evidence supported the Board's decision, and

---

[43] R. at 18–19, Emp.'s Ex. 1.
[44] R. at 88–89.
[45] *Id.*

because there was no error of law alleged or apparent on the record, the Board's decision must be upheld.

**WHEREFORE**, the decision of the Unemployment Insurance Appeal Board is **AFFIRMED** for the reasons explained above.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Resident Judge

*Via File & ServeXpress*

8