# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELAWARE DIVISION OF )
UNEMPLOYMENT INSURANCE, )
           )
          Appellant, )
           )   C.A. No. N25A-02-006 FWW
          v. )
           )
ELIZABETH SULLIVAN, )
UNITED STATES POSTAL )
SERVICE, AND UNEMPLOYMENT )
APPEAL BOARD, )
           )
          Appellees. )

*Upon Appeal from the Unemployment Insurance Appeal Board,*
**AFFIRMED.**

## <u>MEMORANDUM OPINION</u>

Submitted: August 15, 2025
Decided: August 21, 2025

Victoria Counihan, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 N. French Street, Wilmington, DE 19801, attorney for Appellant Department of Labor, Division of Unemployment Insurance.

Ryan J. Senall, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE. 820 N. French Street, Wilmington, DE 19081, attorney for Appellee Unemployment Insurance Appeal Board.

Elizabeth Sullivan, Wilmington, DE, *pro se*, Appellee.

United States Postal Service, P.O. Box 970100, Greensboro, NC 24797, Appellee.

**WHARTON, J.**

# I.    INTRODUCTION

Appellant Delaware Department of Labor Division of Unemployment Insurance ("Division") brings this unusual appeal from the Unemployment Insurance Appeal Board's ("the Board") Decision on Remand. The appeal is unusual in two respects. First, the fact that the Division is participating in the appeal at all is unusual given that it usually refrains from doing so. Second, while the Division purports to ask the Court to reverse the Board, what it really wants the Court to do is to go back to the Board's original decision and review that decision on a different basis than the Court did originally. It professes no interest in the outcome of that review.

On November 12, 2024, another judge of this Court reversed and remanded a decision of the Board denying then appellant Elizabeth Sullivan ("Sullivan") unemployment insurance benefits.[1] The Court, invoking Superior Court Civil Rule 107(f), held that Sullivan's employer, the United States Postal Service ("USPS") had procedurally defaulted by failing to participate in the appeal.[2] It remanded the case to the Board "for further proceedings consistent with this opinion."[3] But the Board, instead of simply following the Court's direction and entering a decision

---

[1] *Sullivan v, Unemployment Insurance Appeal Board,* 2024 WL 4751562 (Del. Super. Ct. Nov. 12, 2024).
[2] *Id.* at *3.
[3] *Id.* at *4.

awarding Sullivan benefits, conducted another hearing.[4]  The Board reversed its earlier decision, despite again finding that Sullivan was not entitled to unemployment insurance benefits.[5]  The Board felt constrained to take that action due to this Court's reversal of its original decision defaulting Sullivan's employer, USPS.  The Board "interpreted the Court's decision as an order to declare [Sullivan] 'qualified' for unemployment benefits – an interpretation that rendered the Board's factual findings inconsequential."[6]

In this appeal, all parties again were sent notice of the brief schedule established by the Court.[7]  The Division filed its opening brief on May 14, 2025.[8]  Unlike in the original appeal, the Board participated and submitted an answering brief.[9]  Sullivan answered on June 4th,[10] but consistent with its refusal to participate, USPS did not.  The Division appealed for the limited purposes of addressing whether the Board was:

> compelled on remand to find [Sullivan] qualified for the receipt of unemployment benefits in the face of testimony and evidence to the contrary, and to argue the Division's position that the lack of participation by [USPS] at the

---

[4] Decision of the Unemployment Insurance Appeal Board on Remand from Superior Court Appeal, at 2, Appeal Docket No. 27133962 (Feb. 5, 2025). ("Decision on Remand").

[5] *Id.*

[6] *Id.*

[7] D.I. 6

[8] Division's Op. Br., D.I. 7.

[9] Board's Ans. Br., D.I. 8.

[10] Sullivan's Ans. Br. (incorrectly captioned Reply Brief), D.I.9.

administrative level or on appeal to this Court should not dictate the determination of whether [Sullivan] is legally entitled to employment benefits.[11]

The Board determined to participate in this appeal because it shares the Division's concerns regarding a party who prevails at the Board level, but defaults on appeal.[12] It is the Board's position that the Court should apply its usual standard when considering appeals without defaulting a party who does not participate on appeal.[13]

After carefully considering the arguments of the Division, the Board, and Sullivan, the Court finds that the Board unnecessarily conducted a second hearing, but correctly entered the order this Court directed it to enter. For that reason, the decision of the Board is **AFFIRMED**. The Court appreciates the considerations the Division and Board have brought to the Court's attention, many for the first time, and will give them considerable weight when the Court reviews future appeals from the Board's decisions. But, because of the unusual procedural posture of this case and the nature of relief the Division seeks, it declines to issue an opinion on the merits as the Division asks. It does, however, for whatever guidance it may provide, share its thoughts on the merits.

## II. FACTS AND PROCEDURAL HISTORY

---

[11] Division's Op. Br. at 3, D.I. 7.
[12] Board's Ans. Br., at 8-9.
[13] *Id.*

4

Sullivan was employed by USPS as a "City Carrier Assistant I" earning $19.93 per hour from November 2022 to January 24, 2023.[14] She was a casual employee working towards becoming a regular employee.[15] Issues developed between Sullivan and her supervisor regarding undelivered packages and mail.[16] Eventually, when things came to a head, Sullivan resigned on January 22, 2023, believing resignation would not limit her opportunities for future federal employment.[17]

A hearing was held before an Appeals Referee on May 16, 2023 after a Department of Labor Claims Deputy denied Sullivan's request for unemployment benefits.[18] The Appeals Referee affirmed the decision of the Claims Deputy, finding that Sullivan voluntarily resigned from her position without good cause, disqualifying her from unemployment insurance benefits.[19]

Sullivan appealed that denial to the Board. A hearing was held on July 26, 2023 at which Sullivan appeared *pro se* while USPS did not send a representative.[20] The Board considered Sullivan's testimony and exhibits, as well as the evidence

[14] *Sullivan v. Unemployment Insurance Appeal Board,* 2024 WL 4751562 at *1 (Del. Super. Ct. Nov. 12, 2024).
[15] *Id.*
[16] *Id.* at *1-2.
[17] *Id.* at *2.
[18] *Id.* at *1.
[19] *Id.* at *2.
[20] *Id.* at *2.

presented to the Appeals Referee, the Referee's Decision, and Sullivan's Notice of Appeal.[21] The Board affirmed the Referee's decision, holding as the Referee did, that Sullivan voluntarily resigned without good cause, disqualifying her from benefits.[22]

Sullivan appealed to this Court. All parties were notified of the Court's briefing schedule.[23] Sullivan filed an opening brief and counsel for the Board wrote saying it would not be participating because the appeal was on the merits and it did not have an interest in seeking to have its decision affirmed on appeal.[24] The Division also elected not to participate.[25] Consistent with its failure to appear before the Board, USPS failed to file an answering brief despite it being issued a "Final Delinquent Brief Notice."[26] The Court, applying Superior Court Civil Rule 107(f)'s default provision, reversed the Board and remanded the matter to it.

On remand, the Board held another hearing on December 4, 2024 to afford Sullivan the opportunity to present additional evidence.[27] Sullivan appeared, testified, and admitted evidence, but USPS did not.[28] The Board "reviewed her

---

[21] *Id.*
[22] *Id.*
[23] *Id.* at *1.
[24] *Id.*
[25] *Id.* at n. 5.
[26] *Id.*
[27] Decision on Remand at 1.
[28] *Id.* at 2.

6

testimony and found no basis to change its September 18, 2023 decision – finding that [Sullivan] had voluntarily quit her job without good cause."[29] Nevertheless,

> In the wake of the December 4, 2024 Board hearing, the Board reconsidered the Superior Court's November 12, 2024 reversal order. The Board struggled to reconcile its duty to render fact-based decisions with the Court's reversal mandate. Ultimately, the Board interpreted the Court's decision as an order to declare [Sullivan] "qualified" for unemployment benefits – an interpretation that rendered the Board's factual findings inconsequential.[30]

The Board then entered an Order finding Sullivan qualified to receive unemployment insurance benefits after her employment terminated on January 22, 2023.[31]

The Division, as a statutory party-in-interest in a judicial action involving any decision of the Board under 19 *Del. C.* § 3322(b), appeals.[32]  It contends in its Opening Brief that: (1) the Board committed legal error in its interpretation and application of the Court's decision reversing and remanding this case; and (2) the Court should refrain from exercising its discretion under Rule 107(f) where an appellee fails to file an answering brief for public policy, administrative, and standard of review reasons.[33]  In its Answering Brief, the Board concurs with the

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] Division's Op. Br. at 3., D.I. 7.
[33] *Id.* at 8.

Division's concerns and raises two additional points regarding the use of Rule 107(f).  In her Answering Brief, Sullivan urges the Court to affirm the outcome before the Board.  USPS failed to file an answering brief.

## III.  STANDARD OF REVIEW

The standard of review under which this Court reviews the Board's decision is deferential, and the Board's decision will only be modified in unusual circumstances.  The Board's decision must be affirmed so long as it is (1) supported by substantial evidence and (2) free from legal error.[34]  A finding of substantial evidence requires such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[35]  While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[36]  Because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings, it must uphold the decision of the Board unless the Board "acts

---

[34] *Unemployment Ins. Appeal Bd. of Dept. of Labor v. Duncan,* 337 A.2d 308, 309 (Del. 1975).

[35] *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. Super. Ct. 1994) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981))*; see also, Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951).

[36] *Breeding v. Contractors-One-Inc.,* 549 A.2d 1102, 1104 (Del. 1988); *Universal,* 340 U.S. at 477 ("Accordingly, it must do more than create a suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal of a directed verdict when the conclusion sought to be drawn is one of fact for the jury.").

arbitrarily capriciously" or its decision "exceeds the bounds of reason."[37] This Court's role is to correct errors of law and to review the factual findings of the Board below to determine if such findings are sufficiently supported by the record and are the product of an orderly and logical deductive process.[38]

## IV. THE PARTIES' CONTENTIONS

The Division makes two points – first that the Board committed legal error when it interpreted and applied the Court's decision reversing and remanding the matter, and second, for a number of reasons, the Court should refrain from exercising it discretion in applying Rule 107(f) where an appellee fails to submit an answering brief.[39] In the Division's view, the Court's instructions on remand did not require the Board to ignore the facts presented by Sullivan or to ignore that she had the burden of showing she was entitled to benefits.[40] The Division's position is that the Board misinterpreted the Court's decision when it determined that it was required to find Sullivan qualified to receive benefits and that misinterpretation constituted legal error.[41]

---

[37] *PAL of Wilmington v. Graham,* 2008 WL 2582986, at *4 (Del. Super. Ct. June 18, 2008).

[38] *Levitt v. Bouvier,* 287 A.2d 671, 673 (Del.1972).

[39] Division's Op. Br. at 8, D.I. 7.

[40] *Id.* at 9-10.

[41] *Id.* at 10.

The Division supports its second point by citing additional considerations the Court may not have taken into account when it made its original decision defaulting USPS. First, there is contrary Superior Court precedent on this exact issue, citing to *Lafferty-Eaton v. T.D. Bank NA*[42] and subsequent cases.[43] In *Lafferty-Eaton,* the Court reversed its original decision to default an non-appearing employer under Rule 107(f) after being presented with the Board's policy argument that doing so unfairly burdened the Unemployment Insurance Trust Fund by placing the burden for the default not on the defaulting employer, but on all of the other employers who paid into the fund.[44] Second, Employing Rule 107(f) eliminates the statutorily mandated standard of review for Board decisions found in 19 *Del. C.* § 3323(a).[45] Third, the use of Rule 107(f) creates inconsistent decisions for similarly situated claimants based on whichever judge hears the appeal.[46] Fourth, the use of Rule 107(f) undermines the administrative process by, in effect, ignoring that process when an employer who prevailed administratively defaults on appeal.[47] Fifth, the use of Rule 107(f) disregards the assignment of the burden of proof.[48] Sixth, defaulting non-participating employers risks violating the federal requirement that states only pay

---

[42] 2014 WL 824294 (Del. Super. Ct. Feb. 20, 2014).
[43] Division's Op. Br. at 12-17, D.I. 7.
[44] *Id.* at v13-14.
[45] *Id.* at 17-18.
[46] *Id.* at 19-20.
[47] *Id.* at 20-23.
[48] *Id.* at 23-24.

claims when due, thereby jeopardizing federal funding under the Social Security Act.[49] Finally, claimants who are not entitled to benefits under state law get a windfall.[50]

The Board also is participating in this Appeal. In its response to whether it committed legal error, the Board expresses its belief that its decision was required by the Court's reversal and remand order.[51] The Board shares the Division's concerns regarding Rule 107(f) and adds two more of its own.[52] The Board is concerned that the Court has not typically used Rule 107(f) in the circumstances present here and the rule, if applied uniformly, could result in prejudice to unemployment claimants where they are the defaulting party on appeal.[53] Sullivan contests the Board's finding that she voluntarily quit her employment and insists that Rule 107(f) was properly applied.[54]

Much of Sullivan's sometimes heated Answering Brief (incorrectly labeled Reply Brief) is devoted to re-arguing the merits of her claim for unemployment insurance benefits and criticizing her former employer, the Claims Deputy, Appeals Referee, the Board, and Department of Justice attorneys representing the Division

---

[49] *Id.* at 24-25.
[50] *Id.* at 25-26.
[51] Board's Ans. Br. at 4-7, D.I. 8.
[52] *Id.* at 8.
[53] *Id.* at 8-9.
[54] Sullivan's Ans. Br. D.I. 9.

and the Board.[55]  Both of those themes run throughout her responses to each of the issues raised by the Division.  She also complains that this appeal should have been assigned to the judge who decided her original appeal.[56]

In its Reply, the Division, in addition to reiterating its request that the Court decide the appeal on the merits, provides a discussion of the standard the Court should employ if it considers whether Sullivan had good cause to voluntarily resign.[57]  It also clarifies that it only is seeking the Court to refrain from using its discretion to apply Rule 107(f) in circumstances whether the appellee fails to appear

---

[55] *See, e.g.,* "The Board can't be trusted to make sound unbiased decisions based off facts and so this is how we end up with unnecessary appeals such as this one. Luckily there is a Superior Court to see through the foolishness because the UIAB/DOJ combo is the worst.  The employer, claims deputy, appeals referee, the Board and DOJ all seem to work in concert to deny, deny, and more deny.  The fake fact finding missions that are crafted to be an unnecessary waste of time, misleading and based off their own bias's conclusions and ill feelings, rather than facts." Sullivan's Ans. Br. at 9-10, D.I. 11;  "In fact, the USPS management was caught in a lie and instead of the DOJ addressing the lie they'd rather throw a thousand case study's [sic] at the Court in an attempt to once again give them a chance to not be held accountable for their actions and tell the court how unfairly the employer have [sic] been treated in clear MAGA fashion." *Id.* at 3.  The Court notes that all of the relevant factual events in this matter occurred before the current President was inaugurated.  The Board's Decision was mailed one day after he was inaugurated. Further there has not been an Attorney General of Delaware of this President's political party since 2005.  It is unlikely anybody was "treated in clear MAGA fashion" in this matter.

[56] Sullivan's Ans. Br. at , D.I. 11.

[57] Division's Reply Br. at 2-4, D.I. 13.

12

on appeal, and not the appellant.[58]  It reasons that an appellant who fails to file an opening brief has voluntarily abandoned its appeal.[59]

## V. DISCUSSION

### A. The Board Did Not Commit Legal Error When It Awarded Unemployment Benefits to Sullivan at the Court's Direction.

Ordinarily, the resolution of any appeal from a Board decision would turn on the discrete issues of whether there was substantial evidence to support the Board's decision and whether that decision was free from legal error.  Unfortunately, USPS' persistent refusal to participate in most administrative and all appellate proceedings, both originally and on remand, has disrupted the ordinary process.  As a result, the Board has become confused, the claimant justifiably upset, and the Court frustrated.

In the initial proceeding, the Court relied on Rule 107(f) to deal with the non-participation of USPS.  It did so without the benefit of any contribution from either the Division or the Board, which both abstained despite USPS' failure to substantially participate in the administrative process.  Rule 107(f) provides:

> If any brief, memorandum, deposition, affidavit, or any other paper which is or should be a part of the case pending in this Court, is not served and filed within the time and in the manner required buy these Rules or in accordance with any other order of the Court or stipulation of counsel, the Court may, in its discretion, dismiss the proceeding if the plaintiff is in default, consider the motion to be abandoned, or summarily grant or deny the motion, such as the

---

[58] *Id.* at 6.
[59] *Id.*

> situation may present itself, or take any other action as it deems necessary to expedite the disposition of the case.

Clearly, Rule 107(f)'s default sanction was a remedy available to the Court, in its discretion, to deal with USPS' non-participation. The Division does not challenge that fact, but argues the Court should refrain from exercising that discretionary option. When an appellee fails to comply with Rule 107, this Court may reverse an agency's decision, notwithstanding the legal or factual soundness of that decision.[60] The Court did exactly that initially in this case.

On appeal, this Court must affirm the Board's decision if it is free from legal error and is supported by substantial evidence. In this appeal, USPS' failure to participate does not warrant the invocation of Rule 107(f) against it because, as the losing party below, it did not take an appeal. The Division appealed and fully participated.

The Division contends that the Board committed legal error. It asks the Court to reverse the current Board's decision now on appeal (the February 5, 2025 decision), and render a decision on the merits of the Board's earlier decision that

---

[60] *See, e.g., Hunter v. First USA/Bank One,* 2004 WL 838715, at *5 (Del. Super. Ct 2004) ("[I]n this case, the Court finds that there exists a significant violation of a statutory precept, in this instance, its own Civil Rule 107(e). Therefore, despite the formidable "substantial evidence" found to exist by the Board, the Court has no other alternative but to reverse the Board's decision due to Appellee's failure to diligently prosecute and file its brief pursuant to Rule 107(e).").

14

was the subject of the Court's original order.[61] It disclaims any interest in the outcome of such a merits-based decision.[62] It argues that the Court's remand order did not require the Board "to ignore the facts presented by the Claimant or to ignore that the Claimant had the burden of proof to show she was entitled to benefits."[63] In the Division's view, the Board "misinterpreted or misapplied" this Court's decision when it found Sullivan was not entitled to benefits but ordered that she receive them.[64]

The Court reversed the Board's decision and remanded the matter to the Board "for further proceedings consistent with this opinion. On remand, the United States Postal Service is estopped from asserting that Elizabeth Sullivan voluntarily resigned without good cause."[65] The Court did not reverse the Board's decision only for it to produce the same result on remand that it had reversed on appeal. Such a result would have been inconsistent with the Court's direction on remand. Nor did it reverse the matter for the Board to engage in further fact finding with the result that the Board tied itself in knots when that fact finding produced a result inconsistent with the Court's direction. It estopped USPS from further contesting the Court's decision in order to foreclose further fact finding. The Court knew full well that the

---

[61] Division's Op. Br. at 27, D.I. 7.
[62] Division's Reply Br. at 2, D.I. 13.
[63] Division's Op. Br. at 9-10, D.I. 7. *Id.* at 9-10.
[64] *Id.*
[65] *Id.* at *3-4.

Board denied Sullivan benefits. Yet it reversed anyway. It did not reverse so the Board could repeat the exercise of denying Sullivan benefits. It reversed the Board's decision so that it would enter an order in Sullivan's favor.

The Board's decision on remand indicates that, at least on some level, it understood the Court's direction – "Ultimately, the Board interpreted the Court's decision as an order to declare Claimant "qualified' for unemployment benefits – an interpretation that rendered the Board's factual findings inconsequential."[66] If the Board understood the Court's Order to require it to declare Sullivan qualified for benefits and its fact findings to be inconsequential, there was no rational reason to hold a second hearing.[67] Nevertheless, despite muddying the waters by conducting that second hearing, ultimately the Board entered a decision "consistent with" the Court's order. Accordingly, the Board did not commit legal error. Its decision is **AFFIRMED**.

### B. The Policy, Administrative, and Standard of Review Considerations Have Merit But Are Not Dispositive.

---

[66] Remand Decision, at 2.

[67] In its decision reversing the Board, the Court relied heavily on *Payne v. Unemployment Insurance Appeals Board,* 2023 WL 166271 (Del. Super. Ct. Jan. 12, 2023). In *Payne,* the Court, just as it did here, invoked Rule 107(f) to reverse a decision of the Board because the appellee/employer failed to participate in the appeal. *Id.* at * 1. It remanded the matter to the Board using identical language as the Court did here. *Id.* at * 3. And, just as in Sullivan's appeal here, both the Board and the Division notified the Court that it would not be participating in the appeal. *Id.* at 1. Unlike in *Lafferty-Eaton*, the Board did not ask the Court to alter or amend its decision. Also, according to counsel at argument, unlike here, the Board simply followed the Court's remand order and did not conduct a second evidentiary hearing.

16

The Division (and the Board) points out various policy, administrative, and standard of review considerations which it thinks should lead the Court to "reconsider its procedural decision in this case and decline to exercise its discretion under Rule 107 to default an employer who is an appellee in an appeal from a decision of the Board."[68]  Those considerations do not fall neatly under either of the bases which might justify the Court reversing the Board – legal error or lack of substantial evidence to support the Board's decision.  Therefore, they cannot form a basis for  reversing the Board.  That is not to say, however, that they lack merit or that the Court should not consider applying them going forward.  The Court now addresses the considerations suggested by the Division and the Board.

### 1.  The Division's Considerations.

### a.  There is Superior Court Precedent on This Exact Issue.

The Division views *Lafferty-Eaton*, for all intents and purposes, as dispositive.[69]  In *Lafferty-Eaton,* the Court, on the application of the Board to alter

---

[68] *Id.* at 11.

[69] "This Court in the future will decline to follow those cases [cases defaulting an appellee]" Division's Op. Br. at 14.  "The *Lafferty-Eaton* decision was expressly meant by this Court to be precedential on this issue, and the Division submits it should consistently control the Court's response to a failure by an employer/appellee to file an Answering Brief in an appeal from a decision of this particular Board in all cases." *Id.* at 15.  "The Court appeared to be departing from or not aware of the precedent set by the Lafferty-Eaton case, which expressly intended to overrule the Rule 107 default line of cases. *Id.* at n. 25.  "The Division argues that as a general policy, this Court should apply the Lafferty-Eaton precedential decision in all cases."

or amend its original decision defaulting the employer under Rule 107(f), reversed itself.[70] It did so on the representation by the Board that the burden of paying uninsurance benefits would fall not only on the defaulting employer, but also on "the whole of assessed employers in this state" who contribute to the Delaware Unemployment Compensation Fund ("Fund").[71] The Court, reversing itself and deeming that burden a manifest injustice, stated that it did not seek to "punish" the employers that pay into the Fund.[72]

In its Opening Brief, the Division represented to the Court that USPS did not pay into the Fund, but rather, was a "reimbursable employer."[73] Reimbursable employers are government employers and some non-profits that do not pay taxes into the Fund and constitute perhaps 1% of employers.[74] Obviously, if USPS were a reimbursable employer, much of the force of the Division's argument would be diminished. No Delaware employers who pay into the Fund would be "punished" because the Fund would be made whole for the benefits paid to Sullivan. Similarly,

---

*Id.* at 16. "The Court directly and clearly stated that the Lafferty-Eaton holding was intended to apply to all similar cases in the future." *Id.* at 17. "[The Court] specifically stated that in the future, the Court would decline to follow the line of cases using Rule 107 to default employer/appellees in appeals from the Board. *Id.* at 18.

[70] *Lafferty-Eaton,* 2014 WL 824294, at *4.

[71] *Id.* at *1.

[72] *Id.* at 3.

[73] Division's Op. Br. at 16, D.I. 7.

[74] *Id.*

since that argument was the sole rationale in *Lafferty-Eaton* for the Court reversing itself, that case would lose its precedential force in this case.

At argument, however, counsel for the Division sought to "correct the record" by informing the Court that USPS is not a reimbursable employer. According to counsel for the Division, because of the way Sullivan's unemployment benefits were calculated, her USPS employment was not the employment used to determine her benefits. It was her prior employment with an employer who did contribute to the Fund. Nevertheless, interested in the category of "reimbursable employers," on August 4th, the Court wrote counsel for the Division asking her for more information on that subject.[75] In response, on August 15th, the Division confirmed that USPS is a reimbursable employer, but, in this case, it was not responsible for Sullivan's unemployment benefits.[76]

The Court in *Lafferty-Eaton* accepted the position of the Board without examining to what degree its original opinion "punished" other employers who contributed to the Fund. In reality, there was no real punishment at all. As of June 30, 2024, the Fund had cash assets of approximately $360,500,000.00.[77] Thousands

---

[75] D.I. 22.

[76] D.I. 24.

[77] Delaware Auditor of Accounts, "Delaware Unemployment Compensation Fund FY24," "Special Report – Fiscal Year Ended June 30, 2024." https://auditor.delaware.gov/wp-content/uploads/sites/209/2024/12/Delaware-Unemployment-Compensation-Fund-2024-Special-Report.pdf. The Auditor of Accounts Special Report noted that "In January 2023, accounting records at DOLUI

of Delaware employers contribute to the Fund.[78]  Here, Sullivan received benefits of $9,568.00.  Although it is unknown how often defaults occur[79] and in what total amount those defaults burden the Fund as a whole, in the end, the effect of appellate defaults on the thousands of individual contributors almost certainly is *de minimus*.[80] Not to mention, there would be no undue burden at all in those appeals where the Court finds for a appellant/employee on the merits.  It is apparent that, despite the obvious appeal of not seeking to "punish" other contributors to the Fund, when the real amount of any "punishment" inflicted on those other contributors is taken into account, that appeal is entirely illusory.  When viewed in its proper context, the actual precedential value of *Lafferty-Eaton* and cases following it is minimal.

### b. This Use of Rule 107 Eliminates the Standard of Review of Board Decisions.

---

[Department of Labor Division of Unemployment Insurance] indicate that an employee overrode internal controls relating to Employees at DOLUI. Subsequently, that employee directed staff to create two fraudulent employer refund checks for $86,827.31 on January 17, 2023, and $94,357.37 on March 16." *Id.*  It would appear that a single employee of DOLUI "punished" the contributors to the Fund far more than employers who defaulted on appeal.

[78] *Id.*  An unknown number ot "reimbursable employers" do not contribute to the Fund or what percentage of the total number of employees they represent.

[79] The Division cites three cases, including this one, where employer/appellees were defaulted since *Lafferty-Eaton* was decided in 2014.

[80] Sullivan's benefits represent .0000265% of the cash assets of the fund as of June 30, 2024.

The Division argues that when the Court procedurally defaults an appellee under Rule 107, it fails to apply the standard of review set out by statute.[81] According to 19 *Del. C.* § 3323(a), "In any judicial proceeding under this section, the findings of the Unemployment Insurance Appeals Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law." With regard to the factual findings of the Board, it is well settled that the scope of this Court's review of the Board's decision on appeal "is limited to a determination of whether there was substantial evidence sufficient to support the findings."[82] But a procedural default is, by definition, not a review of the factual findings of the Board nor of the law it applied, and therefore, does not eliminate the standard of review. The case simply did not proceed far enough on appeal for the standard of review to come into play.[83]

### c. This Use of Rule 107 Creates Inconsistent Decisions for Similarly Situated Claimants.

The Division is concerned that the inconsistent application of Rule 107 – some judges employ it and some, following *Lafferty-Eaton,* do not – causes similarly

---

[81] Division's Op. Br. at 17, D.I. 7.

[82] *Unemployment Insurance Appeal Board v. Duncan,* 337 A.2d 308 (Del. 1975).

[83] The Division asks the Court to "decline to exercise its discretion" not to apply Rule 107. Division's Op. Br. at 11, D.I. 7. But, if the application of Rule 107 truly did eliminate the standard of review, the Court would not have discretion to apply it in the first place.

21

situated claimants to receive differing results.[84]  Ideally, the 21 judges of this Court would all speak with the same voice when confronted with the same questions.  But, just as all litigants and all litigations are not the same, neither are the views of all members of this Court.  Uniformity of treatment for similarly situated litigants is important, but so too is the principle that:

> The efficiency and effectiveness of our judicial system relies heavily on the diligent actions of those involved in legal disputes.  Filing deadlines are in place to promote such judicial efficiency.  Because of this, the inexcusable failure of a party to respond when required to do so cannot be treated lightly by this Court.[85]

Unfortunately, in a world where a certain balance must be struck between competing interests with multiple variables, uniformity is not always possible.

### d.  This Use of Rule 107 Undermines the Administrative Process.

The Division complains that defaulting an employer/appellant on appeal undermines the administrative process in light of the "extensive and sometimes time-consuming administrative processes at the administrative agency level".[86]  The Board captured this sentiment in its remand decision when it noted that the Court's Remand Order "rendered the Board's factual findings inconsequential."[87]  The

---

[84] Division's Op. Br. at 19, D.I. 7.
[85] *Sprung v. Selbyville Cleaners,* 2007 WL 1218683, at *1 (Del. Super. Ct. Apr. 23, 2007).
[86] Division's Op. Br. at 21, D.I. 7.
[87] Remand Decision, at 2.

22

Division notes that frequently, an employer who is successful before the Board might reasonably forego the expense of hiring counsel to represent it on appeal.[88] These points are important ones worthy of the Court's serious consideration whenever it contemplates a Rule 107(f) default, especially when a victorious employer must bear the expense of hiring counsel to represent it on appeal.[89] But, it is difficult to understand how the administrative process is undermined to any greater degree than when the Court reverses the Board on the merits. In the Court's view, the Division should focus its displeasure with any undermining of the administrative process on the defaulting employer.

### e. This Use of Rule 107 Disregards Who Has the Burden of Proof.

During the administrative process and before the Board, the burden of proof was on Sullivan to show that she resigned her job for good cause and that she had exhausted her administrative remedies with her employer. The Division contends that procedurally defaulting USPS via Rule 107(f) disregards that burden. True, it does. It is a legitimate concern which the Court should take seriously. But, defaulting a non-appearing appellee also affirms the appellate process by sanctioning a willful failure to follow the Court's directions on appeal.

---

[88] Division's Op. Br., at 22, D.I. 7.
[89] Here the Court assumes USPS has adequate resources to be represented by counsel.

**f. Defaulting Non-Participating Employers Risks Violating the Federal Requirements that State's Only Pay Claims "When Due."**

The Division cites § 303(a)(1) of the Social Security Act's requirement that states must have methods of administration in place to reasonably ensure the full payment of unemployment compensation when due.[90] It also cites guidance from the U.S. Department of Labor interpreting the "when due" requirement to also require states to ensure that payment of benefits is not made when payments are not due.[91] The Division is concerned that:

> defaulting a non-participating employer "requires the Board to find a claimant qualified to receive unemployment benefits in the face of factual evidence before the Board to the contrary, the Court ***could*** be seen as requiring the Division to pay benefits to a claimant when those benefits are not due under the qualification and eligibility provisions of the Delaware Unemployment Code. The Division is concerned that payments of benefits that are not due could ***potentially*** be seen by the U.S. Department of Labor as a conformity or compliance issue for the Division in a federal audit.[92]

Leaving aside the question of whether the Division might have larger compliance concerns than paying Sullivan unemployment benefits,[93] the Court

---

[90] Division's Op. Br. at 24, D.I. 7.
[91] *Id.* at 24-25.
[92] *Id.* at 25 (emphasis added).
[93] *See,* Delaware Auditor of Accounts Report "Division of Unemployment Insurance FY23" "Agreed-Upon Procedures – Fiscal year Ended June 30, 2023," https://auditor.delaware.gov/wp-content/uploads/sites/209/2025/04/Department-of-Labor-Division-of-Unemployment-Insurance-AUP-Report-FY23.pdf. "DOLUI has

suspects that the prohibition against paying benefits when they are not due may have some connection to fraud and not to judicially directed payments. Nevertheless, should the Division's inchoate concern become more fully formed, the Court would consider it an important consideration arguing against a Rule 107(f) disposition.

### g. Claimants Who Are Not Entitled to Benefits Under State Law Get a Windfall.

The Division worries that extending Rule 107(f) defaults to other types of unemployment appeals, "could require the Board to award benefits to claimants in more egregious circumstances" and result in windfalls to those claimants.[94] Those other more egregious circumstances include: (1) when a claimant committed fraud by returning to work without reporting their earnings; (2) when a claimant filed a claim in another state for the same work; or (3) when a claimant was unable, unavailable, or refused to work.[95] All are valid concerns and the Court agrees it should not exercise its discretion under Rule 107(f) to default an employer in those circumstances and any like circumstances.

### 2. The Board's Considerations

---

received a Disclaimer Opinion on its audited financial statements for three audit reports: the Fiscal Year 2023 and Fiscal Year 2024 Delaware Annual Comprehensive Financial Reports (AFCR), and the Fiscal Year Federal Uniform Guidance Single Audit. ***These disclaimers indicate an inability to audit DOLUI due to a lack of fiscal and accounting data.***" (emphasis added).

[94] Division's Op. Br. at 27, D.I. 7.

[95] *Id.*

The Board agrees with the Division's concerns and adds two of its own. The Court addresses them next.

### a. The Court Has Not Typically Used Rule 107(f) in These Circumstances.

The Board cites an additional six cases where the Court decided an appeal from the Board on the merits after a defaulting employer/appellee failed to participate in briefing on appeal.[96] The point is well taken and the Court's comments in Sec. B(1) above apply here as well.

### b. Such Use of Rule 107(f), Applied Uniformly, Could Result in Prejudice to Unemployment Claimants

The Board is concerned should the Court apply Rule 107(f) against a claimant who has previously been awarded benefits but does not submit an answering brief.[97] On remand, the Board would be required to seek repayment from someone it believes is entitled to benefits.[98] A successful claimant before the Board has an obvious incentive to defend the Board's decision on appeal. Further, unlike defaulting employers, financial considerations rarely prohibit a successful claimant from participating *pro se* on appeal. Therefore, the Court should consider the totality of the circumstances and exercise caution before defaulting a successful claimant on appeal.

---

[96] Board's Ans. Br. at 8, D.I. 8.
[97] *Id.*
[98] *Id.* at 9.

## C. An Analysis on the Merits

The Court understands the Division and the Board to have no interest in the outcome of the case on the merits. Nonetheless, were the Court to take up the Division's invitation to decide the appeal on the merits, it would find for Sullivan.

The decision of the Board on remand is brief. It has only the following to say about the evidence at the second hearing, "Claimant testified and admitted evidence. The Board reviewed her testimony and evidence and found no basis to change its September 18, 2023 decision – finding that Claimant had voluntarily quit her job without good cause."[99] In its somewhat more expansive 2023 decision, the Board found that Sullivan failed to meet her burden to demonstrate that she had good cause for her voluntary resignation.[100]

In order to establish good cause for a voluntary resignation, Sullivan needed to demonstrate: (1) she voluntarily left her employment for reasons attributable to issues within USPS' control and under circumstances in which no reasonably prudent employee would have remained employed; and (2) she first exhausted all reasonable alternatives to resolve the issues before voluntarily terminating her employment.[101]

---

[99] *Id.*

[100] Decision the Unemployment Insurance Appeal Board on Appeal from the Decision of Ksenija V. Milutinovic, Appeal Docket No. 27133962, at 3 (September 18, 2023). (Sept. 2023 Decision).

[101] *Thompson v. Christiana Care Health Sys.,* 25 A.3d 778, 782-83 (Del. 2011).

In explaining its decision, the Board focused on the second prong – the exhaustion of all reasonable alternatives - paying scant attention to the first prong. The Board held:

> [I]n order for Claimant to prevail, she must show more than just being dissatisfied because of suboptimal work conditions. She must show that she notified Employer of the problem, requested a solution, and gave Employer enough time to correct the problem before quitting. None of Claimant's exhibits establish that Claimant alerted Employer of the issues she was having. The multiple text communications between claimant and her supervisors fail to voice complaints or concerns about her job. The majority of text message complaints that Claimant introduced into evidence were sent to an unknown friend or colleague.[102]

The Court was unpersuaded in its first Order that Sullivan had failed to meet her burden. It noted that under the usual standard of review Sullivan faced a "daunting challenge," but observed that challenge was:

> … not insurmountable given that the record does not support the finding that Sullivan failed to inform her employer of resolvable problems and make a good faith effort to resolve them before leaving, especially given USPS's failure to provide any evidence otherwise. In fact, the record reflects that Sullivan exhausted all reasonable alternatives before resigning. At a minimum, Sullivan brought the issues to the attention of her supervisor, an individual with authority to make necessary adjustments. One month later, after informing her employer, Sullivan was faced with two options: (1) continue with her employment with the understanding that she would be fired, and thereby possibly permanently

---

[102] *Id.*

excluded from federal employment; or (2) resign. Faced with these choices, Sullivan resigned.[103]

While not necessary to the ruling in the initial Order, and, therefore *dicta*, these comments leave little doubt how that Court would have ruled on the merits. This Court sees no reason to depart from the prior Court's assessment that Sullivan exhausted her remedies. After carefully reviewing the Board's decision, the Court concludes that the Board did not make an explicit finding based on the first prong. But, given the choice of resigning in order to preserve federal employment opportunities or be fired, no reasonably prudent employee would have chosen to remain employed. Sullivan left her employment for reasons attributable to USPS under circumstances where no reasonably prudent employee would have remained employed. She voluntarily left her job with good cause. There being no substantial evidence to support the Board's decision on either prong, if pressed to find on the merits, the Court would find for Sullivan.

## V. CONCLUSION

Accordingly, for the reasons stated above, the decision of the Unemployment Insurance Appeal Board is **AFFIRMED.**

By affirming the Board, the Court does not mean to say that the policy considerations offered by the Division and the Board are unhelpful or that the Court

---

[103] *Sullivan,* 2024 WL 4751562, at n. 46.

29

does not appreciate them bringing them to the Court's attention. Most, if not all, of the policy considerations advanced by the Division and joined by the Board, many for the first time in this appeal, have considerable merit. The Court intends to give them serious consideration whenever the Court encounters a defaulting appellee in future appeals from a decision of the Board.

In this case, however, the Court finds them insufficiently compelling to reverse the Board.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.